JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a)  PLAINTIFFS
LARRY KIRKLAND

**DEFENDANTS**
USAA CASUALTY INSURANCE COMPANY

**(b)**   County of Residence of First Listed Plaintiff     Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)**   Attorneys *(Firm Name, Address, and Telephone Number)*
Adam S. Barrist, Esq., 215-432-8829
P.O. Box 1820, Media, PA 19063

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

❏ 1   U.S. Government
       Plaintiff

❏ 3   Federal Question
       *(U.S. Government Not a Party)*

❏ 2   U.S. Government
       Defendant

☒ 4   Diversity
       *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                  *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane    ❏ 365 Personal Injury - | ❏ 690 Other | ❏ 423 Withdrawal | ❏ 376 Qui Tam (31 USC |
| ❏ 130 Miller Act | ❏ 315 Airplane Product      Product Liability |  |      28 USC 157 |      3729(a)) |
| ❏ 140 Negotiable Instrument |      Liability    ❏ 367 Health Care/ |  |  | ❏ 400 State Reapportionment |
| ❏ 150 Recovery of Overpayment | ❏ 320 Assault, Libel &      Pharmaceutical |  | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
|      & Enforcement of Judgment |      Slander      Personal Injury | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| ❏ 151 Medicare Act | ❏ 330 Federal Employers'      Product Liability |  | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 152 Recovery of Defaulted |      Liability    ❏ 368 Asbestos Personal |  | ❏ 835 Patent - Abbreviated | ❏ 460 Deportation |
|      Student Loans | ❏ 340 Marine      Injury Product |  |      New Drug Application | ❏ 470 Racketeer Influenced and |
|      (Excludes Veterans) | ❏ 345 Marine Product      Liability |  | ❏ 840 Trademark |      Corrupt Organizations |
| ❏ 153 Recovery of Overpayment |      Liability    **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ❏ 480 Consumer Credit |
|      of Veteran's Benefits | ☒ 350 Motor Vehicle    ❏ 370 Other Fraud | ❏ 710 Fair Labor Standards | ❏ 861 HIA (1395ff) | ❏ 490 Cable/Sat TV |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle    ❏ 371 Truth in Lending |      Act | ❏ 862 Black Lung (923) | ❏ 850 Securities/Commodities/ |
| ❏ 190 Other Contract |      Product Liability    ❏ 380 Other Personal | ❏ 720 Labor/Management | ❏ 863 DIWC/DIWW (405(g)) |      Exchange |
| ❏ 195 Contract Product Liability | ❏ 360 Other Personal      Property Damage |      Relations | ❏ 864 SSID Title XVI | ❏ 890 Other Statutory Actions |
| ❏ 196 Franchise |      Injury    ❏ 385 Property Damage | ❏ 740 Railway Labor Act | ❏ 865 RSI (405(g)) | ❏ 891 Agricultural Acts |
| | ❏ 362 Personal Injury -      Product Liability | ❏ 751 Family and Medical |  | ❏ 893 Environmental Matters |
| |      Medical Malpractice |      Leave Act |  | ❏ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | ❏ 790 Other Labor Litigation | **FEDERAL TAX SUITS** |      Act |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights    **Habeas Corpus:** | ❏ 791 Employee Retirement | ❏ 870 Taxes (U.S. Plaintiff | ❏ 896 Arbitration |
| ❏ 220 Foreclosure | ❏ 441 Voting    ❏ 463 Alien Detainee |      Income Security Act |      or Defendant) | ❏ 899 Administrative Procedure |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment    ❏ 510 Motions to Vacate | | ❏ 871 IRS—Third Party |      Act/Review or Appeal of |
| ❏ 240 Torts to Land | ❏ 443 Housing/      Sentence | |      26 USC 7609 |      Agency Decision |
| ❏ 245 Tort Product Liability |      Accommodations    ❏ 530 General | | | ❏ 950 Constitutionality of |
| ❏ 290 All Other Real Property | ❏ 445 Amer. w/Disabilities -    ❏ 535 Death Penalty | **IMMIGRATION** | |      State Statutes |
| |      Employment    **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 446 Amer. w/Disabilities -    ❏ 540 Mandamus & Other | ❏ 465 Other Immigration | | |
| |      Other    ❏ 550 Civil Rights |      Actions | | |
| | ❏ 448 Education    ❏ 555 Prison Condition | | | |
| |    ❏ 560 Civil Detainee - | | | |
| |      Conditions of | | | |
| |      Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original
       Proceeding

❏ 2   Removed from
       State Court

❏ 3   Remanded from
       Appellate Court

❏ 4   Reinstated or
       Reopened

❏ 5   Transferred from
       Another District
       *(specify)*

❏ 6   Multidistrict
       Litigation -
       Transfer

❏ 8   Multidistrict
       Litigation -
       Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C §1332
Brief description of cause:
Motor vehicle collision in Cheltenham Township, PA.

## VII. REQUESTED IN COMPLAINT:
❏ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
In excess of $150,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ❏ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
03/12/2021

SIGNATURE OF ATTORNEY OF RECORD
/s/ ASB3587

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| LARRY KIRKLAND | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| USAA CASUALTY INSURANCE COMPANY | : | |
| Defendant | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. ( X )

| | | |
|---|---|---|
| 03/12/2021 | /s/ Adam S. Barrist, Esq. | LARRY KIRKLAND |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-432-8829 | 267-247-3098 | abarrist@barristfirm.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____

Address of Defendant: _____

Place of Accident, Incident or Transaction: _____

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐   No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐   No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐   No ☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐   No ☐

I certify that, to my knowledge, the within case ☐ **is** / ☐ **is not** related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____   _____   _____
                                           *Attorney-at-Law / Pro Se Plaintiff*         *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**    *Federal Question Cases:*

☐   1.   Indemnity Contract, Marine Contract, and All Other Contracts
☐   2.   FELA
☐   3.   Jones Act-Personal Injury
☐   4.   Antitrust
☐   5.   Patent
☐   6.   Labor-Management Relations
☐   7.   Civil Rights
☐   8.   Habeas Corpus
☐   9.   Securities Act(s) Cases
☐   10.  Social Security Review Cases
☐   11.  All other Federal Question Cases
         *(Please specify):* _____

**B.**    *Diversity Jurisdiction Cases:*

☐   1.   Insurance Contract and Other Contracts
☐   2.   Airplane Personal Injury
☐   3.   Assault, Defamation
☐   4.   Marine Personal Injury
☐   5.   Motor Vehicle Personal Injury
☐   6.   Other Personal Injury *(Please specify):* _____
☐   7.   Products Liability
☐   8.   Products Liability – Asbestos
☐   9.   All other Diversity Cases
         *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____, counsel of record *or* pro se plaintiff, do hereby certify:

☐   Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐   Relief other than monetary damages is sought.

DATE: _____   _____   _____
                                           *Attorney-at-Law / Pro Se Plaintiff*         *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LARRY KIRKLAND | : CIVIL ACTION |
| 236 MacDonald Ave. | : |
| Wyncote, PA 19095 | : No._____ |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| USAA CASUALTY INSURANCE COMPANY | : |
| 9800 Fredericksburg Road | : |
| San Antonio, TX 78288 | : |
| | : |
| Defendant. | : |
| | : |

## **COMPLAINT**

Plaintiff, Larry Kirkland ("Mr. Kirkland" or "Plaintiff"), through his undersigned

attorney, brings the following Complaint against the above-captioned Defendant.

## **PARTIES**

1. Plaintiff is an adult individual, citizen, resident and domiciliary of the Commonwealth of

   Pennsylvania, with a home address of 236 MacDonald Ave., Wyncote, PA 19095.

2. Defendant, USAA Casualty Insurance Company ("USAA"), is, upon information and belief,

   a corporation, partnership or other business entity that is incorporated in and a citizen of the

   State of Texas and has a principal place of business of 9800 Fredericksburg Road, San

   Antonio, TX 78288.

## JURISDICTION AND VENUE

3.  Jurisdiction is conferred pursuant to 28 U.S.C §1332 as Plaintiff is a citizen, resident and domiciliary of the Commonwealth of Pennsylvania and Defendant is a corporation, partnership or other business entity with a place of incorporation, principal place of business of and citizenship of the State of Texas.

4.  There is, therefore, complete diversity between all Plaintiffs and all Defendants.

5.  The amount in controversy exceeds the sum of $75,000.00, exclusive of interest, fees and costs.

6.  In accordance, *inter alia*, with Golden v. Golden, 382 F.3d 348 (3d Cir.2004) and its progeny, despite the fact that the USAA underinsured motorist policy that is the subject of this litigation only carries a $75,000.00 limit ($25,000.00 stacked times three), since Plaintiff is pleading causes of action for statutory Bad Faith, seeking an entitlement, *inter alia*, to punitive damages, the amount in controversy requirement of 28 U.S.C. §1332(a) is satisfied.

7.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2), as the personal injuries that are the subject of this litigation occurred in Cheltenham Township, PA, within this District.

8.  Further, to the extent that USAA seeks to rely upon a certain forum selection clause in the insurance contact in question, as referred to, *infra*, jurisdiction in the federal court system and venue in the United States District Court for the Eastern District of Pennsylvania, in particular, are proper, in light of, *inter alia*, this court's decisions in Bennett v. USAA, No. 18-CV-3943 AB, 2018 U.S. Dist. LEXIS 209329 (E.D.Pa. December 12, 2018) and Fienman v. USAA, No. 20-CV-5170 MAK, 2020 U.S. Dist. LEXIS 202401 (E.D.Pa. October 30, 2020).

## **FACTS**

9.  On September 13, 2020, Mr. Kirkland, a passenger in Ronald Daniels' ("Mr. Daniels") vehicle, was severely injured when Lon Vaneaton ("Mr. Vaneaton") negligently struck Mr. Daniels' vehicle from behind on Old York Road at Spring Avenue in Cheltenham Township, PA.

10. From the scene of the collision, Mr. Kirkland was taken via ambulance to the Abington Hospital Emergency Room.

11. Mr. Vaneaton/his vehicle were uninsured at the time of the collision.

12. Mr. Kirkland's first-party auto policy through USAA, (policy # 00857 84 85C 7101 8) carries an Uninsured Motorist ("UM") limit of $25,000.00/$50,000.00, stacked times three vehicles. A true and correct copy of the USAA Policy and Declarations Page is attached hereto, incorporated herein and marked as Exhibit "A."

13. Accordingly, $75,000.00 in UM benefits are available to Mr. Kirkland under his USAA policy.

14. Mr. Kirkland elected on his USAA policy and is bound by the full-tort option.  See, Exhibit "A."

15. Prior to the institution of this suit, Mr. Kirkland accepted an offer of a full tender of Mr. Daniels' UM bodily injury insurance limits through GEICO Insurance Company.

16. Mr. Kirkland made a formal demand of USAA for UM benefits commensurate with the damages that he has sustained as the result of the subject collision.

17. USAA, however, has made a final "take it or leave it" offer of $2,500.00 for a resolution of Mr. Kirkland's UM claims.

18. As set forth in greater detail, below, USAA's final "take it or leave it" offer of $2,500.00 does not represent the fair value of Mr. Kirkland's damages, even taking into consideration the

3

amount of the GEICO UM policy already tendered to Mr. Kirkland.

19. Mr. Kirkland, as a passenger, was not charged nor deemed at fault for his role in the subject collision.

20. Mr. Vaneaton was deemed at-fault in the subject collision by the responding Cheltenham Township Police Department.

21. Such violent collision caused Mr. Kirkland to a) sustain the permanent injuries described below, that have caused his body to not heal or function normally with further medical treatment; and b) suffer significant financial harm.

22. As the direct and proximate cause of Mr. Vaneaton's negligence as stated above, Mr. Kirkland has suffered severe permanent physical injury and financial loss.

23. The injuries that Mr. Kirkland has sustained are permanent in nature. Mr. Kirkland has suffered great physical and mental pain and anguish, and in all reasonable probability, will continue to suffer in this manner for a long time in the future, if not for the balance of his natural life.

24. As a further result of the above negligent acts committed by Mr. Vaneaton, Mr. Kirkland has incurred and will continue to incur substantial medical expenses for medical care and attention and will continue to incur additional medical expenses into the foreseeable future.

25. In addition, Mr. Kirkland has suffered other economic injury and will likely continue to suffer such economic injury.

26. Mr. Vaneaton operated his vehicle in such a reckless, careless, and/or negligent manner as to have caused the aforesaid collision to occur.

27. Mr. Vaneaton had a duty to Mr. Kirkland to not operate his vehicle in such a reckless, careless, and/or negligent manner.

28. Mr. Vaneaton breached said duty, as set forth below.

4

29. As a direct and proximate result of the aforesaid acts, omissions, recklessness, carelessness, and/or negligence on the part of Mr. Vaneaton, Mr. Kirkland suffered severe personal injuries; has been and will be in the future, made to endure great pain and suffering, both physical and mental in nature, has been and will be in the future required to expend great sums of money for medical services; has been and will be in the future prevented from attending to his regular activities, duties and responsibilities; has been and will in the future be made to suffer lost earnings and other pecuniary loss.

30. The aforesaid accident was caused by the negligence, carelessness, and/or recklessness of Mr. Vaneaton, because he:

    a.  Failed to keep his vehicle under control at all relevant times;

    b.  Was driving at an excessive speed under the circumstances;

    c.  Violated the Assured Clear Distance Ahead Rule;

    d.  Caused a collision to occur;

    e.  Disregarded traffic signals and signs;

    f.  Failed to keep a proper lookout;

    g.  Caused a violent collision to take place; and

    h.  Otherwise failed to exercise due care under the circumstances.

31. As the result of the above-referenced accident, Mr. Kirkland suffered painful and serious injuries, including, but not limited to:

    a.  disc protrusions at L2-3, L3-4 and L5-S1;

    b.  radiculopathy;

    c.  cervicalgia;

    d.  nerve damage throughout his body;

    e.  strains, sprains, disc bulges and disc herniations throughout his body, the extent of

which is presently unknown;

    f.   torn ligaments and tendons throughout his body, the extent of which is presently unknown;

    g.   head injuries, the extent of which is presently unknown; and

    h.   emotional harm, the extent of which is presently unknown.

32. As a result of such accident, Mr. Kirkland has incurred medical expenses and will continue to incur said medical expenses for an indefinite time into the future.

33. As a result of such accident, Mr. Kirkland suffered grievous pain and suffering and may continue to suffer same for an indefinite time into the future.

34. As a further result of such accident, Mr. Kirkland has suffered and will continue to suffer a loss of life's pleasures.

## COUNT ONE – BAD FAITH

35. Plaintiff incorporates, by reference, the foregoing paragraphs, as though set forth fully herein.

36. Mr. Kirkland was an "insured" of USAA, within the meaning of 42 Pa.C.S.A. §8371, which statute imposes a duty upon an insurance company to act in good faith in dealing with Mr. Kirkland, including but not limited to the handling of his uninsured motorist claim.

37. USAA's duty to act in good faith included, without limitation, the obligation to act with reasonable promptness in evaluating and responding to Mr. Kirkland's claims and with reasonable fairness.

38. In view of the foregoing, USAA acted in bad faith as follows:

    a.   Failure to make anything more than a *de minimus* offer of settlement after having

been presented with full and complete documentary proof of 1) the extent of Mr. Kirkland's collision-related injuries and permanent disfigurement; 2) the clear liability on the part of the tortfeasor; and 3) the extent of the host vehicle's bodily injury insurance limits and that such limits had been tendered;

b. Failure to properly investigate Mr. Kirkland's claim;

c. Failure to properly consider Mr. Kirkland's full-tort status;

d. Failure to properly consider evidence supplied by Mr. Kirkland and his counsel in support of his claim;

e. Causing Mr. Kirkland to suffer undue hardship as a result of reckless, wanton and arbitrary claims-handling practices;

f. Willfully neglecting to consider or process evidence in an effort to save from paying Mr. Kirkland the benefits to which he was legally entitled;

g. Adopting a company practice of intentionally undervaluing uninsured motorist claims and delaying paying said claims for an unreasonable period of time;

h. Delaying and refusing to pay Mr. Kirkland's claim despite having no medical or legal reason not to;

i. Forcing Mr. Kirkland to file suit to recover UM benefits owing to him;

j. Failing to make reasonable and fair offers of settlement of Mr. Kirkland's UM claim;

k. Making representations that were unreasonable in light of the facts and circumstances surrounding Mr. Kirkland's claims;

l. Making offers of settlement that were unfair and unreasonable in light of the injuries and losses sustained by Mr. Kirkland as a result of the collision;

m. Breaching covenants of good faith and fair dealing;

7

     n.   Failing to pay all sums of money owed to Mr. Kirkland;

     o.   Causing Mr. Kirkland unnecessary and undue hardships;

     p.   Engaging in unfair settlement negotiations with their insured;

     q.   Maintaining positions contrary to the policy, facts and evidence; and

     r.   Committing various violations of the Pennsylvania's Unfair Insurance Practices Act, 40 P.S. §1171.1 et seq. and related regulations including but not limited to The Unfair Claim Settlement Practices Regulations, 31 §146.1 et seq.

39. USAA's actions have been in reckless disregard of Mr. Kirkland's rights, and have been willful, wanton and outrageous.

**WHEREFORE**, Plaintiff, Larry Kirkland, demands judgment against USAA, in an amount in excess of $150,000.00, plus punitive damages, costs, fees and whatever additional relief that this Honorable Court deems just and appropriate.

## <u>COUNT TWO – BREACH OF CONTRACT</u>

40. Plaintiff incorporates, by reference, the foregoing paragraphs, as though set forth fully herein.

41. Mr. Kirkland is a named insured of USAA UM policy (policy # 00857 84 85C 7101 8), which provides for UM limits of $25,000.00/$50,000.00, stacked times three vehicles, for a total of $75,000.00 in UM coverage. <u>See</u>, Exhibit "A."

42. USAA is and was duly licensed to engage in the Commonwealth of Pennsylvania in the sale, issuance and distribution of policies of automobile insurance providing various forms of coverage to drivers, passengers and owners of automobiles in the Commonwealth of Pennsylvania.

43. USAA did issue for consideration, policy # 00857 84 85C 7101 8, which provides,

pursuant to Pennsylvania law, for UM coverage, and under said coverage, USAA agreed to pay all sums which Mr. Kirkland would legally be entitled to recover in the event of an uninsured motorist scenario, such as the one that exists in this case.

44. USAA is, therefore, liable to Mr. Kirkland, as a named insured under the USAA policy for his injuries, damages and losses caused by the negligence of Mr. Vaneaton, who was uninsured at the time of the subject collision.

45. Despite having made a demand under Mr. Kirkland's USAA UM policy, USAA has refused to properly negotiate a reasonable settlement for the injuries and damages in the subject collision, pursuant to the aforesaid contract of insurance.

46. In accordance with the policy of insurance (policy # 00857 84 85C 7101 8), which Mr. Kirkland and USAA entered into, for valuable consideration, Mr. Kirkland made a claim for benefits under the policy at issue.

47. Upon information and belief, USAA improperly, unjustifiably and unconscionably attempted to deny benefits due and/or failed to timely pay benefits due under the policy.

48. USAA misrepresented and deliberately under-evaluated Mr. Kirkland's UM claim.

49. USAA has refused and failed to pay the reasonable value of Mr. Kirkland's UM claim.

50. USAA has wrongfully withheld benefits owed to Mr. Kirkland pursuant to the policy.

51. USAA did so by knowingly evaluating its financial interests above the interests of its insured.

52. As a further consequence of USAA's breach of the Insurance Policy, USAA has been unjustifiably enriched to the detriment of Mr. Kirkland.

53. As a further consequence of USAA's breach of the Insurance Policy, Mr. Kirkland has suffered losses, including but not limited to loss of use of benefits payable.

54. The actions of USAA described in this Complaint represent a breach of contract.

55. As a result of USAA's actions as described, they breached their obligation of good faith and fair dealing.

56. Mr. Kirkland had been damaged in a sum not yet fully determined, but in any event to be proved at the time of trial.

**WHEREFORE**, Plaintiff, Larry Kirkland, demands judgment against USAA, in an amount in excess of $150,000.00, plus costs, fees and whatever additional relief that this Honorable Court deems just and appropriate.

**THE BARRIST FIRM, LLC**

By:  /s/ ASB3587
Adam S. Barrist, Esq.
THE BARRIST FIRM, LLC
P.O. Box 1820
Media, PA 19063

Attorney for Plaintiff

Date:  March 12, 2021

10

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LARRY KIRKLAND | : | CIVIL ACTION |
| 7612 Massey Way #A | : | |
| Elkins Park, PA 19027 | : | No._____ |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| USAA CASUALTY INSURANCE COMPANY | : | |
| 9800 Fredericksburg Road | : | |
| San Antonio, TX 78288 | : | |
| | : | |
| Defendant. | : | |
| | : | |

## **JURY DEMAND**

Plaintiff, Larry Kirkland, hereby demands a trial by twelve (12) jurors.


Respectfully submitted,

**THE BARRIST FIRM, LLC**


By:_ /s/ ASB3587_____
Adam S. Barrist, Esq.
THE BARRIST FIRM, LLC
P.O. Box 1820
Media, PA 19063

Attorney for Plaintiff

Date:  March 12, 2021

# EXHIBIT "A"

Case 2:21-cv-01206-HB   Document 1   Filed 03/12/21   Page 16 of 63

# USAA CASUALTY INSURANCE COMPANY

ATTACH TO MAIL MCH-M-I

(A Stock Insurance Company)

9800 Fredericksburg Road · San Antonio, Texas 78288

## PENNSYLVANIA AUTO POLICY RENEWAL DECLARATIONS (ATTACH TO PREVIOUS POLICY)

RENEWAL OF

| State | 01 | 04 | 06 | Veh | POLICY NUMBER |
|---|---|---|---|---|---|
| PA | 028 | 028 | 028 | Terr | 00857 84 85C 7101 8 |

POLICY PERIOD: (12:01 A.M. standard time)
**EFFECTIVE AUG 01 2020 TO FEB 01 2021**

**Named Insured and Address**

LARRY KIRKLAND
7612 MASSEY WAY APT A
ELKINS PARK PA 19027-1010

OPERATORS
01 LARRY KIRKLAND
03 HILDA KIRKLAND

## Description of Vehicle(s)

| VEH | YEAR | TRADE NAME | MODEL | BODY TYPE | ANNUAL MILEAGE | IDENTIFICATION NUMBER | SYM | VEH USE* | Miles One Way | Days Per Week |
|---|---|---|---|---|---|---|---|---|---|---|
| 01 | 13 | NISSAN | ALTIMA 2.5 | 4D | 7000 | 1N4AL3AP1DC148547 | | P | | |
| 04 | 16 | HONDA | ACCORD 4D LX | 4D | 12000 | 1HGCR2F31GA173208 | | P | | |
| 06 | 19 | HONDA | ODYSSEY EX | MINIVAN | 7500 | 5FNRL6H56KB115515 | | P | | |

The Vehicle(s) described herein is principally garaged at the above address unless otherwise stated. \* W/C=Work/School; B=Business; F=Farm; P=Pleasure

VEH 01  ELKINS PARK PA 19027-1010        VEH 06  ELKINS PARK PA 19027-1010
VEH 04  ELKINS PARK PA 19027-1010

**This policy provides ONLY those coverages where a premium is shown below. The limits shown may be reduced by policy provisions and may not be combined regardless of the number of vehicles for which a premium is listed unless specifically authorized elsewhere in this policy.**

| COVERAGES          LIMITS OF LIABILITY ("ACV" MEANS ACTUAL CASH VALUE) | VEH 01 6-MONTH D=DED AMOUNT | PREMIUM $ | VEH 04 6-MONTH D=DED AMOUNT | PREMIUM $ | VEH 06 6-MONTH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ |
|---|---|---|---|---|---|---|---|---|
| PART A - LIABILITY | | | | | | | | |
| BODILY INJURY    EA PER $  25,000 | | | | | | | | |
| EA ACC $  50,000 | | 101.59 | | 111.96 | | 139.34 | | |
| PROPERTY DAMAGE EA ACC $  25,000 | | 85.18 | | 86.84 | | 106.11 | | |
| PART B - FIRST PARTY BENEFITS | | | | | | | | |
| MEDICAL EXPENSE $  5,000 | | 35.35 | | 33.43 | | 30.90 | | |
| PART C - UNINSURED MOTORISTS STACKED | | | | | | | | |
| BODILY INJURY    EA PER $  25,000 | | | | | | | | |
| EA ACC $  50,000 | | 11.05 | | 11.98 | | 11.05 | | |
| PART C - UNDERINSURED MOTORISTS STACKED | | | | | | | | |
| BODILY INJURY    EA PER $  25,000 | | | | | | | | |
| EA ACC $  50,000 | | 19.07 | | 20.67 | | 19.07 | | |

TOTAL PREMIUM - SEE FOLLOWING PAGE(S)

ADDITIONAL INTEREST - LESSOR
VEH 06  AMERICAN HONDA FINANCE CORPORATION, SACRAMENTO   CA
LOSS PAYEE
VEH 01  POLICE & FIRE FEDERAL CREDIT UNION, FORT WORTH   TX

ENDORSEMENTS: ADDED 08-01-20 -  NONE
REMAIN IN EFFECT(REFER TO PREVIOUS POLICY)- A072(06)  ACCFOR(01)  A402(02)
  RSGPCW(01)  5100PA(03)
INFORMATION FORMS:  PADS(10)  PAFRD(02)  60PA(05)  570APA(03)  570PA(03)
  571APA(06)  571PA(06)  663PA(04)  999PA(21)  999PAL(04)  160EPA(03)

| VEH 01 | XXX40 0000 | | VEH 04 | RMF63 0000 | | VEH 06 | RMM76 0000 | | VEH | | |
|---|---|---|---|---|---|---|---|---|---|---|---|

In WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary at San Antonio, Texas, on this date   JUNE 19, 2020

Isaac Johnson, Secretary        James Syring, President

**5000 C** 05-12
53383-05-12
0901119ca9c479b5

USAA Confidential

# USAA CASUALTY INSURANCE COMPANY

(A Stock Insurance Company)
9800 Fredericksburg Road · San Antonio, Texas 78288

PENNSYLVANIA AUTO POLICY
RENEWAL DECLARATIONS
(ATTACH TO PREVIOUS POLICY)

| State | 01 | 04 | 06 | Veh | POLICY NUMBER |
|-------|----|----|----|-----|---------------|
| PA | 028 | 028 | 028 | Terr | 00857 84 85C 7101 8 |

POLICY PERIOD:    (12:01 A.M. standard time)
EFFECTIVE AUG 01 2020 TO FEB 01 2021

**Named Insured and Address**

LARRY KIRKLAND
7612 MASSEY WAY APT A
ELKINS PARK PA 19027-1010

## Description of Vehicle(s)

| VEH | YEAR | TRADE NAME | MODEL | BODY TYPE | ANNUAL MILEAGE | IDENTIFICATION NUMBER | SYM | VEH USE 1 Miles One Way | WORK/SCHOOL Days Per Week |
|-----|------|-----------|-------|-----------|----------------|----------------------|-----|-----|-----|
| 01 | 13 | NISSAN | ALTIMA 2.5 | 4D | 7000 | 1N4AL3AP1DC148547 | | P | |
| 04 | 16 | HONDA | ACCORD 4D LX | 4D | 12000 | 1HGCR2F31GA173208 | | P | |
| 06 | 19 | HONDA | ODYSSEY EX | MINIVAN | 7500 | 5FNRL6H56KB115515 | | P | |

The Vehicle(s) described herein is principally garaged at the above address unless otherwise stated. * W/C=Work/School; B=Business; F=Farm; P=Pleasure

VEH 01   ELKINS PARK PA 19027-1010            VEH 06   ELKINS PARK PA 19027-1010
VEH 04   ELKINS PARK PA 19027-1010

**This policy provides ONLY those coverages where a premium is shown below. The limits shown may be reduced by policy provisions and may not be combined regardless of the number of vehicles for which a premium is listed unless specifically authorized elsewhere in this policy.**

| COVERAGES          LIMITS OF LIABILITY ("ACV" MEANS ACTUAL CASH VALUE) | VEH 01 6-MONTH D=DED AMOUNT | PREMIUM $ | VEH 04 6-MONTH D=DED AMOUNT | PREMIUM $ | VEH 06 6-MONTH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ |
|---|---|---|---|---|---|---|---|---|
| PART D - PHYSICAL DAMAGE COVERAGE | | | | | | | | |
| COMPREHENSIVE LOSS       ACV LESS | D 500 | 43.06 | D 500 | 49.49 | D 500 | 39.32 | | |
| COLLISION LOSS           ACV LESS | D 500 | 179.94 | D 500 | 191.81 | D 500 | 313.97 | | |
| RENTAL REIMBURSEMENT | | | | | | | | |
|         STANDARD CLASS | | 23.99 | | 23.99 | | | | |
| TOWING AND LABOR | | 9.88 | | 9.88 | | 9.88 | | |
| | | | | | | | | |
| VEHICLE TOTAL PREMIUM | | 509.11 | | 540.05 | | 669.64 | | |

6 MONTH PREMIUM $ 1718.80
PREMIUM DUE AT INCEPTION. THIS IS NOT A BILL, STATEMENT TO FOLLOW.

EARNED ACCIDENT FORGIVENESS APPLIES WITH FIVE YEARS CLEAN DRIVING WITH USAA.
FULL TORT APPLIES
THE FOLLOWING COVERAGE(S) DEFINED IN THIS POLICY ARE NOT PROVIDED FOR:
   VEH 06 - RENTAL REIMBURSEMENT

          ADDITIONAL MESSAGE(S) - SEE FOLLOWING PAGE(S)

| Y M 01 | XXX40 00000 | Y M 04 | RMF63 00000 | Y M 06 | RMM76 00000 | Y M | |

In WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary at San Antonio, Texas,
on this date JUNE 19, 2020

*Isaac Johnson*, Secretary          *James D Syring*, President

5000 C 05-12
53383-05-12

0901119ca9c479b5

USAA Confidential

**USAA CASUALTY INSURANCE COMPANY**

(A Stock Insurance Company)
9800 Fredericksburg Road - San Antonio, Texas 78288

PENNSYLVANIA AUTO POLICY
RENEWAL DECLARATIONS
(ATTACH TO PREVIOUS POLICY)

| State | | Veh | POLICY NUMBER |
|---|---|---|---|
| PA | | Terr | 00857 84 85C 7101 8 |

POLICY PERIOD: (12:01 A.M. standard time)
**EFFECTIVE AUG 01 2020 TO FEB 01 2021**

**Named Insured and Address**

LARRY KIRKLAND
7612 MASSEY WAY APT A
ELKINS PARK PA 19027-1010

**Description of Vehicle(s)**

| VEH | YEAR | TRADE NAME | MODEL | BODY TYPE | ANNUAL MILEAGE | IDENTIFICATION NUMBER | SYM | VEH USE* WORK/SCHOOL Miles One Way | Days Per Week |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

The Vehicle(s) described herein is principally garaged at the above address unless otherwise stated. [* W/C=Work/School; B=Business; F=Farm; P=Pleasure]

**This policy provides ONLY those coverages where a premium is shown below. The limits shown may be reduced by policy provisions and may not be combined regardless of the number of vehicles for which a premium is listed unless specifically authorized elsewhere in this policy.**

| COVERAGES LIMITS OF LIABILITY ("ACV" MEANS ACTUAL CASH VALUE) | VEH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

THE LAWS OF THE COMMONWEALTH OF PENNSYLVANIA, AS ENACTED BY THE
GENERAL ASSEMBLY, ONLY REQUIRE THAT YOU PURCHASE LIABILITY AND
FIRST PARTY MEDICAL BENEFIT COVERAGES. ANY ADDITIONAL COVERAGES
OR COVERAGES IN EXCESS OF THE LIMITS REQUIRED BY LAW ARE PROVIDED
ONLY AT YOUR REQUEST AS ENHANCEMENTS TO BASIC COVERAGES.

THE PREMIUM FOR THE BASIC COVERAGE IS:

| | | | |
|---|---|---|---|
| BI | 15/30 | $ | 287.56 |
| PD | 5000 | $ | 257.36 |
| FIRST PARTY MEDICAL BENEFIT | 5000 | $ | 99.68 |

In WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary at San Antonio, Texas,
on this date JUNE 19, 2020

Isaac Johnson, Secretary

James D. Syring, President

5000 C 05-12
53383-05-12
0901119ca9c479b5

USAA Confidential



Member Name: LARRY KIRKLAND
Member Number: 00857 84 85C 7101 8
Loss Report Number: 17
Date of Loss: 9/13/2020
Company: USAA CASUALTY INSURANCE COMPANY

# Texas Unsworn Declaration

My name is <u>Mary Ann Rice,</u> my date of birth is <u>March 18, 1960</u>, and my work address is 9800 Fredericksburg Road, San Antonio, Texas 78288, and United States of America.

I declare under penalty of perjury that the foregoing and attached (policy) is a true and correct copy.

E-SIGNED by Mary Ann Rice
on 2021-02-12 22:20:22 GMT
_____
Signature

Executed in Bexar County, State of Texas, on ___February 12, 2021_____.
                                                              (Date)

Internal

USAA Confidential

0901119cab6aca80

Case ID: 210200246
Control No.: 21022482
POLICY 01

PAGE    1
CE1-SH-IMG-I
R5678
AUGUST 14, 2020



# AUTOMOBILE POLICY PACKET

LARRY KIRKLAND
7612 MASSEY WAY APT A
ELKINS PARK PA 19027-1010

CIC    00857 84 85 7101  8

POLICY PERIOD:   EFFECTIVE AUG 14 2020 TO FEB 01 2021

## IMPORTANT MESSAGES

Refer to your Declarations Page and endorsements to verify that coverages, limits, deductibles and other policy details are correct and meet your insurance needs.  Required information forms are also enclosed for your review.

**IF YOU CARRY COLLISION COVERAGE, THIS COVERAGE WILL EXTEND TO A VEHICLE YOU ARE RENTING.  THE COVERAGE WILL PAY THE AMOUNT NECESSARY TO REPAIR OR REPLACE THE DAMAGED VEHICLE, LESS YOUR DEDUCTIBLE. SOME RENTAL COMPANIES, HOWEVER, MAY CHARGE YOU FOR INCIDENTAL DAMAGES - LIKE DIMINUTION-IN-VALUE OR LOSS-OF-USE - THAT ARE NOT COVERED BY YOUR COLLISION COVERAGE.**

Check your vehicle for a safety recall today! Visit www.usaa.com/autorecall to learn more.

TEXTING & DRIVING ... It Can Wait! Join USAA in the movement against distracted driving by going to http://itcanwait.usaa.com to watch powerful videos and take the pledge to not text and drive!

This is not a bill.        Any premium charge or change for this policy will be reflected on your next regular monthly statement. Your current billing statement should still be paid by the due date indicated.

**To receive this document and others electronically, or manage your Auto Policy online, go to usaa.com.**

For U.S. calls:   Policy Service (800) 531-8111. Claims (800) 531-8222.

ACS1                                                                49708-0406

USAA Confidential

Case ID: 210200246
Control No.: 21022482
POLICY 02

**THIS PAGE INTENTIONALLY LEFT BLANK**

USAA Confidential

Case ID: 210200246
Control No.: 21022482
POLICY 03

**USAA CASUALTY INSURANCE COMPANY**

PAGE   3

ADDL INFO ON NEXT PAGE  CE1-SH-IMG-I
AMENDMENT TO

(A Stock Insurance Company)
9800 Fredericksburg Road · San Antonio, Texas 78288

| State | 01 ,04 ,06 | | Veh Terr | POLICY NUMBER |
|---|---|---|---|---|
| PA | 028 028 028 | | | 00857 84 85C 7101 8 |

**PENNSYLVANIA AUTO POLICY**
AMENDED DECLARATIONS
(ATTACH TO PREVIOUS POLICY)

POLICY PERIOD:        (12:01 A.M. standard time)
**EFFECTIVE AUG 14 2020 TO FEB 01 2021**

**Named Insured and Address**

OPERATORS
01 LARRY KIRKLAND
03 HILDA KIRKLAND

LARRY KIRKLAND
7612 MASSEY WAY APT A
ELKINS PARK PA 19027-1010

**Description of Vehicle(s)**

| VEH | YEAR | TRADE NAME | MODEL | BODY TYPE | ANNUAL MILEAGE | IDENTIFICATION NUMBER | SYM | VEH USE | WORK/SCHOOL Miles One Way | Days Per Week |
|---|---|---|---|---|---|---|---|---|---|---|
| 01 | 13 | NISSAN | ALTIMA 2.5 | 4D | 7000 | 1N4AL3AP1DC148547 | | P | | |
| 04 | 16 | HONDA | ACCORD 4D LX | 4D | 12000 | 1HGCR2F31GA173208 | | P | | |
| 06 | 19 | HONDA | ODYSSEY EX | MINIVAN | 7500 | 5FNRL6H56KB115515 | | P | | |

The Vehicle(s) described herein is principally garaged at the above address unless otherwise stated. * W/C=Work/School, B=Business; F=Farm;P=Pleasure
VEH 01   ELKINS PARK PA 19027-1010          VEH 06   ELKINS PARK PA 19027-1010
VEH 04   ELKINS PARK PA 19027-1010

**This policy provides ONLY those coverages where a premium is shown below. The limits shown may be reduced by policy provisions and may not be combined regardless of the number of vehicles for which a premium is listed unless specifically authorized elsewhere in this policy.**

| COVERAGES          LIMITS OF LIABILITY ("ACV" MEANS ACTUAL CASH VALUE) | VEH 01 6-MONTH D=DED AMOUNT | PREMIUM $ | VEH 04 6-MONTH D=DED AMOUNT | PREMIUM $ | VEH 06 6-MONTH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ |
|---|---|---|---|---|---|---|---|---|
| PART A - LIABILITY | | | | | | | | |
| BODILY INJURY    EA PER $   25,000 | | | | | | | | |
| EA ACC $   50,000 | | | | | | | | |
| PROPERTY DAMAGE EA ACC $   25,000 | | | | | | | | |
| PART B - FIRST PARTY BENEFITS | | | | | | | | |
| MEDICAL EXPENSE $  5,000 | | | | | | | | |
| PART C - UNINSURED MOTORISTS STACKED | | | | | | | | |
| BODILY INJURY    EA PER $   25,000 | | | | | | | | |
| EA ACC $   50,000 | | | | | | | | |
| PART C - UNDERINSURED MOTORISTS STACKED | | | | | | | | |
| BODILY INJURY    EA PER $   25,000 | | | | | | | | |
| EA ACC $   50,000 | | | | | | | | |
| PART D - PHYSICAL DAMAGE COVERAGE | | | | | | | | |
| COMPREHENSIVE LOSS    ACV LESS | D 500 | | D 500 | | D 500 | | | |
| COLLISION LOSS    ACV LESS | D 500 | | D 500 | | D 500 | | | |

TOTAL PREMIUM - SEE FOLLOWING PAGE(S)

ADDITIONAL INTEREST - LESSOR
VEH 06  AMERICAN HONDA FINANCE CORPORATION, SACRAMENTO  CA
LOSS PAYEE
VEH 01   POLICE & FIRE FEDERAL CREDIT UNION, FORT WORTH  TX

ENDORSEMENTS: ADDED 08-14-20 -  NONE
REMAIN IN EFFECT(REFER TO PREVIOUS POLICY)- A072(06)  ACCFOR(01)  A402(02)
  RSGPCW(01)   5100PA(03)

F1   1

| | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01 | XXX400 00000 | | 04 | RMF630 0000 | | 06 | RMM760 00000 | | | | | | | XXXX | | | | |

In WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary at San Antonio, Texas, on this date  AUGUST 14, 2020

Isaac Johnson, Secretary          James Syring, President

5000 C 05-12
53383-05-12
0901119cab6aca80

USAA Confidential

Case ID: 210200246
Control No.: 21022482
POLICY 04

PAGE   4



**USAA CASUALTY INSURANCE COMPANY**

(A Stock Insurance Company)
9800 Fredericksburg Road - San Antonio, Texas 78288
PENNSYLVANIA AUTO POLICY
AMENDED DECLARATIONS
(ATTACH TO PREVIOUS POLICY)

| State | 01 .04 .06 | Veh | **POLICY NUMBER** |
|---|---|---|---|
| PA | 028 028 028 | Terr | 00857 84 85C 7101 8 |

POLICY PERIOD:          (12:01 A.M. standard time)
**EFFECTIVE AUG 14 2020 TO FEB 01 2021**

**Named Insured and Address**

LARRY KIRKLAND
7612 MASSEY WAY APT A
ELKINS PARK PA 19027-1010

**Description of Vehicle(s)**

| VEH | YEAR | TRADE NAME | MODEL | BODY TYPE | ANNUAL MILEAGE | IDENTIFICATION NUMBER | SYM | VEH USE | WORK/SCHOOL Miles One Way | Days Per Week |
|---|---|---|---|---|---|---|---|---|---|---|
| 01 | 13 | NISSAN | ALTIMA 2.5 | 4D | 7000 | 1N4AL3AP1DC148547 | | P | | |
| 04 | 16 | HONDA | ACCORD 4D LX | 4D | 12000 | 1HGCR2F31GA173208 | | P | | |
| 06 | 19 | HONDA | ODYSSEY EX | MINIVAN | 7500 | 5FNRL6H56KB115515 | | P | | |

The Vehicle(s) described herein is principally garaged at the above address unless otherwise stated. * WC=Work/School; B=Business; F=Farm; P=Pleasure

VEH 01  ELKINS PARK PA 19027-1010       VEH 06  ELKINS PARK PA 19027-1010
VEH 04  ELKINS PARK PA 19027-1010

**This policy provides ONLY those coverages where a premium is shown below. The limits shown may be reduced by policy provisions and may not be combined regardless of the number of vehicles for which a premium is listed unless specifically authorized elsewhere in this policy.**

| COVERAGES             LIMITS OF LIABILITY ("ACV" MEANS ACTUAL CASH VALUE) | VEH 01 6-MONTH | | VEH 04 6-MONTH | | VEH 06 6-MONTH | | VEH | |
|---|---|---|---|---|---|---|---|---|
| | D=DED AMOUNT | PREMIUM $ | D=DED AMOUNT | PREMIUM $ | D=DED AMOUNT | PREMIUM $ | D=DED AMOUNT | PREMIUM $ |
| PART D - PHYSICAL DAMAGE COVERAGE RENTAL REIMBURSEMENT         STANDARD CLASS TOWING AND LABOR | | ██████ | | ██████ | | ██████ | | |
| VEHICLE TOTAL PREMIUM | | | | | | | | |

--------------------------------ADJUSTMENT REASON--------------------------------
CHANGE IN OPERATOR DATA OP 01

    6 MONTH PREMIUM..██████       6 MONTH INCREASE..██████
   PREMIUM DUE AT INCEPTION. THIS IS NOT A BILL, STATEMENT TO FOLLOW.

FULL TORT APPLIES
THE FOLLOWING COVERAGE(S) DEFINED IN THIS POLICY ARE NOT PROVIDED FOR:
    VEH 06 - RENTAL REIMBURSEMENT

| V Y 01 | XXX4000000 | | V 04 | RMF6300000 | | V 06 | RMM7600000 | | V |
|---|---|---|---|---|---|---|---|---|---|

In WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary at San Antonio, Texas,
on this date AUGUST 14, 2020

Isaac Johnson, Secretary        James D. Syring, President

**5000 C 05-12**
53383-05-12

0901119cab6aca80

USAA Confidential

Case ID: 210200246
Control No.: 21022482
POLICY 05

LAST PAGE   5
CIC    00857 84 85      7101



**SUPPLEMENTAL INFORMATION**

**EFFECTIVE  AUG  14  2020  TO  FEB  01  2021**

The following approximate premium discounts or credits have already been applied to reduce your policy premium costs.

NOTE: Age or **senior citizen** status, if allowed by your state/location, was taken into consideration when your rates were set and your premiums have already been adjusted.

```
VEHICLE 01
   ANNUAL MILEAGE DISCOUNT
   ANTI-THEFT DISCOUNT
   MULTI-CAR DISCOUNT
   PASSIVE RESTRAINT DISCOUNT
   PREMIER DRIVER LEVEL DISCOUNT

VEHICLE 04
   ANTI-THEFT DISCOUNT
   DAYTIME RUNNING LIGHTS DISCOUNT
   MULTI-CAR DISCOUNT
   PASSIVE RESTRAINT DISCOUNT
   PREMIER DRIVER LEVEL DISCOUNT

VEHICLE 06
   ANNUAL MILEAGE DISCOUNT
   ANTI-THEFT DISCOUNT
   DAYTIME RUNNING LIGHTS DISCOUNT
   MULTI-CAR DISCOUNT
   NEW VEHICLE DISCOUNT
   PASSIVE RESTRAINT DISCOUNT
   PREMIER DRIVER LEVEL DISCOUNT
```



Case ID: 210200246
Control No.: 21022482
POLICY 06



# LEASED AUTOS - ADDITIONAL COVERED PERSON

This Endorsement forms a part of the auto policy to which it is attached.

It is effective from the policy effective date or from the date shown on the amended Declarations.

**We** agree that, with respect to the covered auto described on the Declarations, insurance under this policy applies to the leasing or rental agency(s) named as an additional covered person, but only to the extent that such agency qualifies as a **covered person** under Definition 3. of **covered person** in Part A – Liability Coverage of this policy. **Our** inclusion of this additional covered person does not operate to increase the limits shown on the Declarations.

The insurance for any described auto which is held under any leasing, rental, or similar agreement expires in the following cases:

(1) The lease or rental agreement is revoked or terminated; or

(2) The additional covered person takes possession of the auto.

**We** further agree that if the named insured elects to cancel the policy or change coverage, **we** will give written notice of the cancellation or change in coverage and its effective date to the additional covered person. If **we** decide to cancel the policy, **we** will give the same advance notice of cancellation to the additional covered person as **we** give to the named insured listed on the Declarations.

**We** may send notices to the additional covered person either by mail or by electronic means. However, if the additional covered person requests in writing that **we** not send notices, including notice of cancellation, **we** will abide by that request.

Copyright, USAA, 2004.  All rights reserved.
Includes copyrighted material of Insurance Services Office, used with permission.

**A072(06)** Rev. 11–04

0901119cab6aca80

USAA Confidential

ACCIDENT FORGIVENESS

When a premium for Accident Forgiveness is shown on the Declarations:

1. If you or any family member shown as an operator on the Declarations:

   a. Is involved in an at-fault accident that occurs after the effective date of this endorsement, we will waive any premium increase under this policy that would otherwise be applied for the first such at-fault accident.

   b. Was involved in an at-fault accident forgiven in a policy written by us or one of our affiliates and such operator was removed from that policy and added to this policy without any gap in coverage, we will continue to forgive the accident on this policy for the remainder of the period of time the premium increase would have occurred under this policy if there are no other at-fault accidents for which premium is waived under this policy.

   We will waive the premium increase for only one at-fault accident per policy period, regardless of the number of operators shown on the Declarations.

2. We will waive the premium increase for the at-fault accident in Section I for the period of time during which:

   a. This endorsement is in effect; and

   b. A premium increase for such at-fault accident would have otherwise applied to this policy.

The Accident Forgiveness Endorsement must remain in effect during any renewal period of this policy over the full accident forgiveness period for the premium increase waiver to remain in effect.

Copyright, USAA 2009. All rights reserved.

91228-0309
Page 1 of 1

ACCFOR(01) 3-09

0901119cab6aca80

USAA Confidential

Case ID: 210200246
POLICY 08
Control No.: 21022482

# AMENDATORY ENDORSEMENT

The coverage provided by this Endorsement is subject to all the provisions of the policy and amendments except as they are modified as follows.

## PART D – PHYSICAL DAMAGE COVERAGE

**INSURING AGREEMENT**

Paragraph A. is replaced in its entirety by the following:

A.  Comprehensive Coverage (excluding **collision**).

  1.  Physical damage. **We** will pay for **loss** caused by other than **collision** to **your covered auto**, including its equipment, and personal property contained in **your covered auto**, minus any applicable deductible shown on the Declarations. The deductible will be waived for **loss** to window glass that can be repaired rather than replaced. In cases where the repair proves unsuccessful and the window glass must be replaced, the full amount of the deductible, if any, must be paid.

  2.  Transportation expenses. **We** will also pay:

    a.  The reasonable amount for transportation expenses incurred by **you** or any **family member**, but no more than the cost of renting an Economy Class vehicle, as defined under Rental Reimbursement Coverage. This applies only in the event of a total theft of **your covered auto**. **We** will pay only transportation expenses incurred during the period beginning 48 hours after the theft and ending when **your covered auto** is returned to use or, if not recovered or not **repairable**, up to seven days after **we** have made a settlement offer.

    b.  If Rental Reimbursement Coverage is afforded, the vehicle class for transportation expenses is the vehicle class shown on the Declarations for Rental Reimbursement for that vehicle.

Paragraph C. is replaced in its entirety by the following:

C.  Rental Reimbursement Coverage (for **loss** other than total theft).

  1.  **We** will reimburse **you** for expenses **you** or any **family member** incurs to rent a substitute for **your covered auto**. This coverage applies only if:

    a.  **Your covered auto** is withdrawn from use due to a **loss**, other than a total theft, to that auto; and

    b.  The **loss** is covered under Comprehensive Coverage or caused by **collision**, and the cause of **loss** is not otherwise excluded under Part D of this policy.

  2.  **We** will reimburse **you** only for that period of time reasonably required to **repair** or replace **your covered auto**. If **we** determine **your covered auto** is a total loss, the rental period will end no later than seven days after **we** have made a settlement offer.

**LIMIT OF LIABILITY**

Paragraph A. of the Limit of Liability section is replaced in its entirety by the following:

0901119cab6aca80          USAA Confidential



Case ID: 210200246
Control No.: 21022482
POLICY 09

A. Total loss to **your covered auto. Our** limit of liability under Comprehensive Coverage and Collision Coverage is the **actual cash value** of the vehicle, inclusive of any **custom equipment**, and the cost to transfer or replace any equipment, furnishings or parts designed to assist disabled persons.

1. The maximum amount **we** will include for **loss** to **custom equipment** in or on **your covered auto** is $5,000.

2. **We** will declare **your covered auto** to be a total loss if, in **our** judgment, the cost to **repair** it would be greater than its **actual cash value** minus its salvage value after the **loss**.

3. If Car Replacement Assistance is shown on the Features Declarations for this **your covered auto**, **we** will pay an additional 20% of the **actual cash value** of the vehicle at the time of a total loss. This additional amount:

   a. Is separate from the limit available for **loss** to **your covered auto** under Comprehensive Coverage or Collision Coverage; and

   b. Is available if the total loss is paid:

      (1) Under this policy's Comprehensive Coverage or Collision Coverage; or

      (2) Because of the **PD** by or on behalf of persons or organizations who may be legally responsible.

   However, Car Replacement Assistance does not apply to total loss to any **nonowned vehicle**.

Paragraph D. is replaced in its entirety by the following:

D. Under Rental Reimbursement Coverage, **our** maximum limit of liability is the reasonable amount necessary to reimburse **you** for expenses incurred to rent a vehicle in the applicable class shown on the Declarations:

1. Economy Class. For purposes of this endorsement, Economy Class means "mini," small or compact 2- and 4-door cars that are not considered sports or luxury vehicles and are not the station wagon type.

2. Standard Class. For purposes of this endorsement, Standard Class means standard and full size 2- and 4-door cars that are not considered sports or luxury vehicles and are not the station wagon type.

3. Multipassenger/Truck Class. For purposes of this endorsement, Multipassenger/Truck Class means:

   a. Sports, convertible and luxury cars of any size;

   b. Station wagons;

   c. Minivans;

   d. Mid-size cargo and passenger **vans**;

   e. Pickup trucks; and

   f. "Mini," small and midsize sport utility vehicles (SUVs) that are not considered luxury SUVs.

4. Large SUV Class. For purposes of this endorsement, Large SUV Class means luxury SUVs of any size, large SUVs, any private passenger vehicle equipped to assist the disabled (when available) and large cargo or passenger **vans**.

0901119cab6aca80                    USAA Confidential

Case ID: 210200246
POLICY 10
Control No.: 21022482

## PART E – GENERAL PROVISIONS

**OUR RIGHT TO RECOVER PAYMENT**

The Our Right to Recover Payment section is amended to add the following:

**Our** rights in this section do not apply with respect to amounts paid in excess of the **actual cash value** of **your covered auto** because of Car Replacement Assistance.

Copyright, USAA, 2013. All rights reserved.

**A402(02)** Rev. 05–14

0901119cab6aca80

USAA Confidential

Case ID: 210200246
POLICY 11
Control No.: 21022482



# AMENDMENT OF POLICY PROVISIONS – RIDE SHARING ACTIVITY

This Amendment forms a part of the auto policy to which it is attached, and it modifies that policy as follows:

_____

Notwithstanding Paragraph 3. of the definition of **covered person** in Part A – Liability, **covered person** does not include any **Transportation Network Company**.

## EXCLUSION

**We** do not provide coverage under this policy for accident or loss that occurs while any **covered person** is operating or **occupying** a vehicle engaged in **ride sharing activity** in conjunction with a **Transportation Network Company.** This exclusion does not apply to a share-the-expense car pool.

This exclusion applies during the time the **covered person** is logged on to the **Transportation Network Company's** online-enabled application or platform and available to accept a passenger or delivery assignment, whether or not a passenger or delivery assignment has been accepted. When a passenger or delivery assignment has been accepted, coverage is excluded while the passenger or property to be delivered is **occupying your covered auto.**

However, if a premium for Ride Share Gap Protection is shown on the Declarations for **your covered auto:**

1. This exclusion does not apply with respect to that vehicle during the time when the **covered person** is logged on to the **Transportation Network Company's** online-enabled application or platform and available to accept a passenger or delivery assignment, but has not accepted a passenger or delivery assignment; and

2. Coverage under this policy will extend with respect to that vehicle during the time when the **covered person** is logged on to the **Transportation Network Company's**

online-enabled application or platform and available to accept a passenger or delivery assignment, but has not yet accepted a passenger or delivery assignment.

3. When a passenger or delivery assignment has been accepted, coverage will not extend while the passenger or property to be delivered is **occupying your covered auto**.

## DEFINITIONS

The following definitions apply:

1. **"Ride sharing activity"** means use of **your covered auto** to provide prearranged transportation of persons or property in conjunction with a **Transportation Network Company**.

2. **"Transportation Network Company"** means a person or entity that provides prearranged transportation services for compensation using an online-enabled application or platform to connect clients with drivers who use their personal vehicles to provide the requested transportation. Examples of a **Transportation Network Company** include, but are not limited to, Uber, SideCar and Lyft.

## DUTIES

The following duties apply:

1. **You** must notify **us** if any **covered person** is participating in **ride sharing activity**.

2. For accident or loss that occurs while any **covered person** is operating a vehicle engaged in **ride sharing activity**, any person or entity seeking any coverage or

RSGPCW(01) 12-14

128974-1114__03
Page 1 of 2


USAA Confidential

Case ID: 210200246
POLICY 12
Control No.: 21022482

payment of any benefits must cooperate with **us** to ensure **we** are provided with pertinent data regarding the loss, including the precise dates and times:

a.  The **covered person** logged on and off the **Transportation Network Company's** online-enabled application or platform; and

b.  When a passenger or delivery assignment was accepted through such application or platform.

**You** must cooperate with **us** by executing an authorization to obtain the pertinent data and records regarding the loss, if such authorization is necessary for release of the data or records.

Copyright, USAA 2014. All rights reserved.

**RSGPCW(01)** 12-14

Page 2 of 2

0901119cab6aca80

USAA Confidential

Case ID: 210200246
Control No.: 21022482
POLICY 13



9800 Fredericksburg Road
San Antonio, Texas 78288

## PENNSYLVANIA AUTO POLICY

### READ YOUR POLICY, DECLARATIONS AND ENDORSEMENTS CAREFULLY

The automobile insurance contract between the named insured and the company shown on the Declarations page consists of this policy plus the Declarations page and any applicable endorsements. The Quick Reference section outlines essential information contained on the Declarations and the major parts of the policy.

The policy provides the coverages and amounts of insurance shown on the Declarations for which a premium is shown.

This is a participating policy. You are entitled to dividends as may be declared by the board of directors.

If this policy is issued by United Services Automobile Association ("USAA"), a reciprocal interinsurance exchange, the following apply:

- By purchasing this policy you are a member of USAA and are subject to its bylaws.

- This is a non-assessable policy. You are liable only for the amount of your premium as USAA has a free surplus in compliance with Article 19.03 of the Texas Insurance Code of 1951, as amended.

- The board of directors may annually allocate a portion of USAA's surplus to Subscriber's Accounts. Amounts allocated to such accounts remain a part of USAA's surplus and may be used as necessary to support the operations of the Association. A member shall have no right to any balance in the member's account except until following termination of membership, as provided in the bylaws.

## QUICK REFERENCE

|  |  | DECLARATIONS PAGE |
|---|---|---|
|  |  | Named Insured and Address<br>Policy Period<br>Operators<br>Description of Vehicle(s)<br>Coverages, Amounts of<br>  Insurance and Premiums<br>Endorsements |
| Beginning on Page | 3 | Agreement and Definitions |
| Part A | 4 | Liability Coverage |
|  |  | Definitions<br>Insuring Agreement<br>  Bodily Injury Liability Coverage and<br>  Property Damage Liability Coverage<br>Limit of Liability<br>Supplementary Payments<br>Exclusions<br>Out of State Coverage<br>Other Insurance |
| Part B | 7 | First Party Benefits |
|  |  | Definitions<br>Insuring Agreement<br>  First Party Benefits<br>  Combined Benefits<br>Limit of Liability<br>Exclusions<br>Priorities of Policies<br>Non-Duplication of Benefits |
| Part B | 12 | Medical Payments Coverage |
|  |  | Definitions<br>Insuring Agreement<br>Limit of Liability<br>Exclusions<br>Other Insurance<br>Special Provisions |
| Part B | 14 | Air Bag and Seat Belt Benefits |
|  |  | Definitions<br>Insuring Agreement<br>Limit of Liability<br>Exclusions<br>Other Insurance |
|  |  | (Quick Reference continued on Page 2) |

0901119cab6aca80        USAA Confidential

Case ID: 210200246
POLICY 14
Control No.: 21022482



| Part C | 15 | Uninsured Motorists Coverage<br>Underinsured Motorists Coverage |
|---|---|---|

Definitions
Insuring Agreement
  Uninsured Motorists Coverage
  Underinsured Motorists Coverage
Limit of Liability
  Uninsured Motorists Coverage
  (Stacked)
  Underinsured Motorists Coverage
  (Stacked)
Exclusions
Other Insurance
Consent to Settle

| Part D | 21 | Physical Damage Coverage |
|---|---|---|

Definitions
Insuring Agreement
  Comprehensive Coverage
  Collision Coverage
  Rental Reimbursement Coverage
  USAA Roadside Assistance
Limit of Liability
Payment of Loss
Loss Payable Clause
Waiver of Collision Deductible
Exclusions
No Benefit to Bailee
Other Sources of Recovery
Appraisal

| Part E | 26 | General Provisions |
|---|---|---|

Bankruptcy
Changes
Conformity to Law
Constitutionality Clause
Duties After an Accident or Loss
Legal Action Against Us
Misrepresentation
Non-Duplication of Payment
Our Right to Recover Payment
Ownership
Policy Period and Territory
Reducing the Risk of Loss
Spouse Access
Termination
Transfer of Your Interest in this
  Policy
Two or More Auto Policies

0901119cab6aca80                        USAA Confidential

Case ID: 210200246
Control No.: 21022482
POLICY 15

# PENNSYLVANIA AUTO POLICY

## AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we will provide the coverages and limits of liability for which a premium is shown on the Declarations.

## DEFINITIONS

The words defined below are used throughout this policy. They are in boldface when used.

A. "You" and "your" refer to the "named insured" shown on the Declarations and spouse if a resident of the same household.

B. "We," "us," and "our" refer to the Company providing this insurance.

C. "Auto business" means the business of altering, customizing, leasing, parking, repairing, road testing, delivering, selling, servicing, towing, repossessing or storing vehicles.

D. "Bodily injury" (referred to as BI).

　　1. "Bodily injury" means bodily harm, sickness, disease or death.

　　2. "Bodily injury" does not include mental injuries such as emotional distress, mental anguish, humiliation, mental distress, or any similar injury unless it arises out of physical injury to some person.

E. "Driving contest or challenge" includes, but is not limited to:

　　1. A competition against other people, vehicles, or time; or

　　2. An activity that challenges the speed or handling characteristics of a vehicle, or improves or demonstrates driving skills, provided the activity occurs on a track or course that is closed from non-participants.

F. "Family member" means a person related to you by blood, marriage, or adoption who resides primarily in your household. This includes a ward or foster child.

G. "Fungi" means any type or form of fungi, including mold or mildew, and includes any mycotoxins, spores, scents, or byproducts produced or released by fungi.

H. "Miscellaneous vehicle" means the following motorized vehicles: motorhome; golf cart; snowmobile; all-terrain vehicle; or dune buggy.

I. "Motorcycle" means a two- or three-wheeled motor vehicle that is subject to motor vehicle licensing in the location where the motorcycle is principally garaged.

J. "Newly acquired vehicle."

　　1. "Newly acquired vehicle" means a vehicle, not insured under another policy, that is acquired by you or any family member during the policy period and is:

　　　　a. A private passenger auto, pickup, trailer or van;

　　　　b. A miscellaneous vehicle that is not used in any business or occupation; or

　　　　c. A motorcycle, but only if a motorcycle is shown on the current Declarations.

0901119cab6aca80　　　　　　　USAA Confidential

Case ID: 210200246
POLICY 46
Control No.: 21022482



2.  We will automatically provide for the newly acquired vehicle the broadest coverages as are provided for any vehicle shown on the Declarations. If your policy does not provide Comprehensive Coverage or Collision Coverage, we will automatically provide these coverages for the newly acquired vehicle subject to a $250 deductible for each loss.

3.  Any automatic provision of coverage under J.2. will apply for up to 30 days after the date you or a family member becomes the owner of the newly acquired vehicle. If you wish to continue coverage for the newly acquired vehicle beyond this 30-day period, you must request it during this 30-day period, and we must agree to provide the coverage you request for this vehicle. If you request coverage after this 30-day period, any coverage that we agree to provide will be effective at the date and time of your request unless we agree to an earlier date.

K.  "Noneconomic loss" means pain and suffering and other non-monetary detriment.

L.  "Occupying" means in, on, getting into or out of.

M.  "Property damage" (referred to as PD).

1.  "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

2.  For purposes of this policy, electronic data is not tangible property. Electronic data means information, facts or programs:

a.  Stored as or on;

b.  Created or used on; or

c.  Transmitted to or from;

computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

N.  "Serious injury" means an injury resulting in death, serious impairment of body function or permanent serious disfigurement.

O.  "Trailer" means a vehicle designed to be pulled by a private passenger auto, pickup, van, or miscellaneous vehicle. It also means a farm wagon or implement while towed by such vehicles.

P.  "Van" means a four-wheeled land motor vehicle of the van type with a load capacity of not more than 2,000 pounds.

Q.  "Your covered auto" except as modified in Part B – First Party Benefits means:

1.  Any vehicle shown on the Declarations.

2.  Any newly acquired vehicle.

3.  Any trailer you own.

# PART A – LIABILITY COVERAGE

DEFINITIONS

"Covered person" as used in this Part means:

1.  You or any family member for the ownership, maintenance, or use of any auto or trailer.

2.  Any person using your covered auto.

3.  Any other person or organization, but only with respect to legal liability imposed on them for the acts or omissions of a person for whom coverage is afforded in 1. or 2. above. With respect to an auto or trailer other than your covered auto, this provision only applies if the other person or organization does not own or hire the auto or trailer.

5100PA(03) Rev. 01-14

0901119cab6aca80

USAA Confidential

Case ID: 210200246
POLICY 17
Control No.: 21022482

(PART A Cont'd.)

The following are not covered persons under Part A:

1. The United States of America or any of its agencies.

2. Any person with respect to BI or PD resulting from the operation of an auto by that person as an employee of the United States Government. This applies only if the provisions of Section 2679 of Title 28, United States Code as amended, require the Attorney General of the United States to defend that person in any civil action which may be brought for the BI or PD.

INSURING AGREEMENT

We will pay compensatory damages for BI or PD for which any covered person becomes legally liable because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. Our duty to settle or defend ends when our limit of liability for these coverages has been paid or tendered. We have no duty to defend any suit or settle any claim for BI or PD not covered under this policy.

LIMIT OF LIABILITY

For BI sustained by any one person in any one auto accident, our maximum limit of liability for all resulting damages, including, but not limited to, all direct, derivative or consequential damages recoverable by any persons, is the limit of liability shown on the Declarations for "each person" for BI Liability. Subject to this limit for "each person", the limit of liability shown on the Declarations for "each accident" for BI Liability is our maximum limit of liability for all damages for BI resulting from any one auto accident. The limit of liability shown on the Declarations for "each accident" for PD Liability is our maximum limit of liability for all damages to all property resulting from any one auto accident.

These limits are the most we will pay regardless of the number of:

1. Covered persons;

2. Claims made;

3. Vehicles or premiums shown on the Declarations; or

4. Vehicles involved in the auto accident.

However, if a policy provision that would defeat coverage for a claim under this Part is declared to be unenforceable as a violation of the state's financial responsibility law, our limit of liability will be the minimum required by the state's financial responsibility law.

SUPPLEMENTARY PAYMENTS

In addition to our limit of liability, we will pay on behalf of a covered person:

1. Premiums on appeal bonds and bonds to release attachments in any suit we defend. But we will not pay the premium for bonds with a face value over our limit of liability shown on the Declarations.

2. Prejudgment interest awarded against the covered person on that part of the judgment we pay. If we make an offer to pay the applicable limit of liability, we will not pay any prejudgment interest based on that period of time after the offer.

3. Interest accruing, in any suit we defend, on that part of a judgment that does not exceed our limit of liability. Our duty to pay interest ends when we offer to pay that part of the judgment that does not exceed our limit of liability.

4. Up to $250 a day for loss of wages because of attendance at hearings or trials at our request.

5. The amount a covered person must pay to the United States Government because of damage to a government-owned private passenger auto, pickup, or van which occurs while the vehicle is in the care, custody, or control of a covered person. The most we will pay is an amount equal to one month of the basic salary of the covered person at the time of a loss. Only Exclusions A.1. and A.8. apply.

5100PA(03) Rev. 01-14

0901119cab6aca80

USAA Confidential


Case ID: 210200246
Control No.: 21022482
POLICY 18

(PART A Cont'd.)

6. Other reasonable expenses incurred at our request.

7. All defense costs we incur.

EXCLUSIONS

A. We do not provide Liability Coverage for any covered person:

1. Who intentionally acts or directs to cause BI or PD, or who acts or directs to cause with reasonable expectation of causing BI or PD.

2. For PD to property owned or being transported by a covered person.

3. For PD to property rented to, used by, or in the care of any covered person. This exclusion (A.3.) does not apply to damage to a residence or garage.

4. For BI to an employee of that person which occurs during the course of employment. This exclusion (A.4.) does not apply to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that person's liability arising out of the ownership or operation of a vehicle while it is being used to carry persons for a fee. This exclusion (A.5.) does not apply to:

   a. A share-the-expense car pool; or

   b. Your covered auto used for volunteer work when reimbursement is limited to mileage expenses.

6. While employed or otherwise engaged in the auto business. This exclusion (A.6.) does not apply to the ownership, maintenance, or use of your covered auto by you, any family member, or any partner, agent, or employee of you or any family member.

7. Maintaining or using any vehicle while that person is employed or otherwise engaged in any business or occupation other than the auto business, farming, or ranching. This exclusion (A.7.) does not apply:

   a. To the maintenance or use of a private passenger auto; a pickup or van owned by you or any family member; or a trailer used with these vehicles; or

   b. To the maintenance or use of a pickup or van not owned by you or any family member if the vehicle's owner has valid and collectible primary liability insurance or self-insurance in force at the time of the accident.

8. Using a vehicle without expressed or implied permission.

9. For BI or PD for which that person is an insured under any nuclear energy liability policy. This exclusion (A.9.) applies even if that policy is terminated due to exhaustion of its limit of liability.

10. For BI or PD occurring while your covered auto is rented or leased to others, or shared as part of a personal vehicle sharing program.

11. For punitive or exemplary damages.

12. For BI sustained as a result of exposure to fungi, wet or dry rot, or bacteria.

B. We do not provide Liability Coverage for the ownership, maintenance, or use of:

1. Any vehicle that is not your covered auto unless that vehicle is:

   a. A four- or six-wheel land motor vehicle designed for use on public roads;

   b. A moving van for personal use;

   c. A miscellaneous vehicle; or

   d. A vehicle used in the business of farming or ranching.

0901119cab6aca80

USAA Confidential



Case ID: 210200246
Control No.: 21022482
POLICY 19

(PART A Cont'd.)

2. Any vehicle, other than *your* covered *auto*, that is owned by *you*, or furnished or available for *your* regular use. This exclusion (B.2.) does not apply to a vehicle not owned by *you* if the vehicle's owner has valid and collectible primary liability insurance or self-insurance in force at the time of the accident.

3. Any vehicle, other than *your* covered *auto*, that is owned by or furnished or available for the regular use of, any *family member*. This exclusion (B.3.) does not apply:

   a. To *your* maintenance or use of such vehicles; or

   b. To a vehicle not owned by any *family member* if the vehicle's owner has valid and collectible primary liability insurance or self-insurance in force at the time of the accident.

4. Any vehicle while being operated in, or in practice for, any driving contest or challenge.

C. There is no coverage for liability assumed by any *covered person* under any contract or agreement.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which *your* covered *auto* is principally garaged, *your* policy will provide at least the minimum amounts and types of liability coverages required by law. However, no one will be entitled to duplicate payments for the same elements of loss.

## OTHER INSURANCE

If there is other applicable liability insurance, *we* will pay only *our* share of the loss. *Our* share is the proportion that *our* limit of liability bears to the total of all applicable limits. However, any insurance *we* provide to a *covered person* for a vehicle *you* do not own shall be excess over:

1. Any other applicable liability insurance; or

2. Any self-insurance in compliance with a state's financial responsibility law or mandatory insurance law.

---

## PART B - FIRST PARTY BENEFITS

### DEFINITIONS

A. "Accidental Death Benefit" means the death benefit paid to the executor or administrator of the deceased *covered person's* estate if *BI* resulting from an auto accident causes the death of *you* or any *family member* within 24 months from the date of the accident. If there is no executor or administrator, benefits shall be paid to:

1. The deceased *covered person's* surviving spouse; or

2. If there is no surviving spouse, the deceased *covered person's* surviving children; or

3. If there is no surviving spouse or surviving children, to the deceased *covered person's* estate.

B. "*Covered person*" as used in this Part means:

1. *You* or any *family member*;

2. Any other person while:

   a. Occupying *your* covered *auto*; or

   b. Not occupying a motor vehicle if injured as a result of an accident in Pennsylvania involving *your* covered *auto*.

0901119cab6aca80

USAA Confidential

Case ID: 210200246
POLICY 20
Control No.: 21022482

(PART B Cont'd.)

3. A non-occupant who has no other source of First Party Benefits, injured by any vehicle insured for liability under this policy for which you are not required to maintain First Party Benefits. Only the minimum Medical Expense Benefit required by Pennsylvania law will be provided.

C. "Funeral Expense Benefit" means actual expenses incurred for a covered person's funeral, burial, cremation, or other form of disposition. These expenses must:

1. Result from BI sustained by the covered person in an auto accident; and

2. Be incurred for death that occurs within 24 months of the date of the accident.

D. "Medical Expense Benefit" means the reasonable fees for necessary medical treatment and rehabilitative services, all without limitation as to time, provided that they are incurred within 18 months from the date of the accident causing the BI. However, if within 18 months from the date of the accident it can be determined with reasonable medical probability that further expenses may be incurred after this period, the 18-month time limit will not apply to the payment of these additional medical expenses.

E. "Motor vehicle" as used in this Part means a self-propelled vehicle operated or designed for use upon public roads. However, "motor vehicle" does not include a vehicle operated:

1. By muscular power;

2. On rails or tracks; or

3. Solely by electric power obtained from overhead trolley wires, but not operated upon rails.

F. "Necessary medical treatment and rehabilitative services" means:

1. Treatment, accommodations, products or services which are determined to be necessary by a licensed health care

provider, unless they are determined to be unnecessary by a State-approved Peer Review Organization (PRO); and

2. Nonmedical remedial care and treatment rendered in accordance with a recognized religious method of healing.

G. "Peer Review Organization (PRO)" means:

1. An organization with which the Federal Health Care Financing Administration or the Commonwealth contracts for medical review of Medicare or medical assistance services; or

2. Any health care review company, approved by the commissioner, that engages in peer review for the purpose of determining that medical and rehabilitation services are medically necessary and economically provided.

H. "Work Loss Benefit" means:

1. Loss of income. Up to 80% of gross income actually lost by a covered person as a result of BI sustained in an auto accident; and

2. Reasonable expenses actually incurred to reduce loss of income by hiring:

a. Special help, thereby enabling the covered person to work; or

b. A substitute to perform the work a self-employed covered person would have performed.

However, "Work Loss Benefit" does not include:

1. Loss of expected income for any period following the death of a covered person; or

2. Expenses incurred for services performed following the death of a covered person; or

0901119cab6aca80          USAA Confidential


Case ID: 210200246
POLICY 21
Control No.: 21022482

(PART B Cont'd.)

3. Any loss of income or expenses incurred for services performed during the first five working days the covered person did not work after the accident because of the BI.

I. "Your covered auto" as used in this Part means a motor vehicle for which you maintain First Party Benefits as required under the Pennsylvania Motor Vehicle Financial Responsibility law.

INSURING AGREEMENT

We will pay the following benefits, in accordance with the Pennsylvania Motor Vehicle Financial Responsibility law:

A. First Party Benefits.

1. We will pay the Medical Expense Benefit to or for a covered person who sustains BI caused by an accident arising out of the maintenance or use of a motor vehicle.

2. We will pay the following additional benefits if shown on the Declarations:

   a. Work Loss Benefit.

   b. Funeral Expense Benefit.

   c. Accidental Death Benefit.

B. Combined Benefits.

1. If Combined Benefits is shown on the Declarations, we will pay, subject to the limits of liability described in this Part, the following First Party Benefits to or for a covered person who sustains BI caused by an accident arising out of the maintenance or use of a motor vehicle:

   a. Medical Expense Benefit.

   b. Work Loss Benefit.

   c. Funeral Expense Benefit.

   d. Accidental Death Benefit.

2. We will pay Combined Benefits only for expenses or loss incurred within three years from the date of the accident.

LIMIT OF LIABILITY

The following provisions represent the most we will pay regardless of the number of covered persons, claims made, vehicles or premiums shown on the Declarations, or vehicles involved in an auto accident:

A. First Party Benefits.

1. The limit of liability shown on the Declarations for Medical Expense is our maximum limit of liability for Medical Expense Benefit for BI sustained by any one covered person in any one auto accident.

2. The limits of liability shown on the Declarations for Work Loss, total and per month, are the most we will pay under Work Loss Benefit for all loss of income and expenses incurred because of the BI sustained by any one covered person in any one auto accident.

3. The limit of liability shown on the Declarations for Funeral Expense is our maximum limit of liability for Funeral Expense Benefit because of the death of any one covered person resulting from the BI sustained in any one auto accident. Death must occur within 24 months of the date of the accident.

4. The limit of liability shown on the Declarations for Accidental Death is the amount we will pay for Accidental Death Benefit because of the death of you or any family member resulting from BI sustained in any one auto accident.

0901119cab6aca80                    USAA Confidential

Case ID: 210200246
Control No.: 21022482
POLICY 22

(PART B Cont'd.)

B.  Combined Benefits.

1.  The limit of liability shown on the Declarations for Combined Benefits is the most we will pay, in the aggregate, to or for any one covered person because of the BI sustained in any one accident. Subject to this aggregate limit, our maximum limit of liability for each benefit under Combined Benefits is the limit of liability shown on the Declarations for that benefit.

2.  We will make available at least the minimum limit required by the Pennsylvania Motor Vehicle Financial Responsibility Law for Medical Expense Benefit. However, this (2.) will not change our maximum limit of liability.

C.  No one will be entitled to receive duplicate payments for the same elements of loss under this Part and any other similar insurance or self-insurance. This includes payments under Part A or Part C of this policy.

D.  Any amounts payable under Paragraphs A. or B. above shall be excess over any amounts paid, payable or required to be provided to a covered person under any workers' compensation law or similar law.

E.  Any Medical Expense Benefit that exceeds $100,000 shall be excess over any amounts paid or payable under the Catastrophic Loss Trust Fund established by the Pennsylvania Motor Vehicle Financial Responsibility law.

EXCLUSIONS

We do not provide benefits under this Part for BI sustained by any covered person:

1.  While intentionally causing or attempting to cause BI to any person, including that covered person.

2.  While committing a felony.

3.  While seeking to elude lawful apprehension or arrest by a law enforcement official.

4.  Arising out of the maintenance or use of a motor vehicle knowingly converted by that person. However, this exclusion (4.) does not apply to you or any family member.

5.  Who, at the time of the accident, is an owner of a currently registered motor vehicle and who does not have financial responsibility as required by the Pennsylvania Motor Vehicle Financial Responsibility law.

6.  Occupying, maintaining or using a motor vehicle while located for use as a residence or premises.

7.  As a pedestrian if the accident occurs outside of Pennsylvania. This exclusion (7.) does not apply to you or any family member.

8.  While operating or occupying a recreational vehicle not intended for highway use, motorcycle, motor-driven cycle, motorized pedalcycle, or like type vehicle required to be registered under Pennsylvania law.

9.  Caused by or as a consequence of:

a.  Discharge of a nuclear weapon (even if accidental);

b.  War (declared or undeclared);

c.  Civil war;

d.  Insurrection; or

e.  Rebellion or revolution.

10. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

a.  Nuclear reaction;

b.  Radiation; or

c.  Radioactive contamination.

0901119cab6aca80                    USAA Confidential

Case ID: 210200246
POLICY 23
Control No.: 21022482

(PART B Cont'd.)

PRIORITIES OF POLICIES

A.  We will pay First Party Benefits in accordance with the order of priorities set forth by the Pennsylvania Motor Vehicle Financial Responsibility law. We will not pay if there is another insurer at a higher level of priority. The first category listed below is the highest level of priority and the fourth category listed below is the lowest level of priority.

B.  The priority order is:

First   The insurer providing benefits to the covered person as a named insured.

Second   The insurer providing benefits to the covered person as a family member who is not a named insured under another policy providing coverage under the Pennsylvania Motor Vehicle Financial Responsibility law.

Third   The insurer of the motor vehicle which the covered person is occupying at the time of the accident.

Fourth   The insurer providing benefits on any motor vehicle involved in the accident if the covered person is:

a.   Not occupying a motor vehicle; and

b.   Not provided the First Party Benefit under any other automobile policy.

In this fourth priority, an unoccupied parked motor vehicle is not a motor vehicle involved in an accident unless it was parked in a manner as to create an unreasonable risk of injury.

C.  If two or more policies have equal priority within the highest applicable priority level:

1.   The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim. If contribution is sought among insurers responsible under the fourth priority, proration shall be based on the number of involved motor vehicles.

2.   If we are the insurer against whom the claim is first made, our payment to or for a covered person will not exceed the applicable limit of liability for the First Party Benefits shown on the Declarations.

3.   The maximum recovery under all policies will not exceed the amount payable under the policy with the highest dollar limits of benefits.

NON-DUPLICATION OF BENEFITS

No one will be entitled to recover duplicate payments for the same elements of loss under this or any other similar automobile insurance, including self-insurance.

0901119cab6aca80          USAA Confidential

Case ID: 210200246
POLICY-24
Control No.: 21022482

(PART B Cont'd.)

## PART B – MEDICAL PAYMENTS

DEFINITIONS

A.  "Covered person" as used in this Part means:

1.  You or any family member while occupying any auto or miscellaneous vehicle.

2.  Any other person while occupying your covered auto.

3.  You or any family member while not occupying a motor vehicle if injured by:

    a.  A motor vehicle designed for use mainly on public roads;

    b.  A miscellaneous vehicle; or

    c.  A trailer.

B.  "Medical payment fee" is an amount as determined by us or someone on our behalf, that we will pay for charges made by a licensed hospital, licensed physician, or other licensed medical provider for medically necessary and appropriate medical services. The amount that we will pay will be one of the following:

1.  The amount provided by an applicable agreement with a Preferred Provider Organization, Preferred Provider Network, or other similar agreement; or

2.  The amount required, approved, or allowed by a fee schedule established by a state, federal, or other governmental entity in the relevant geographic area; or

3.  The amount negotiated with the provider; or

4.  The lesser of the following:

    a.  The actual amount billed; or

    b.  A reasonable fee for the service provided.

C.  "Medically necessary and appropriate medical services" are those services or supplies provided or prescribed by a licensed hospital, licensed physician, or other licensed medical provider that, as determined by us or someone on our behalf, are required to identify or treat BI caused by an auto accident and sustained by a covered person and that are:

1.  Consistent with the symptoms, diagnosis, and treatment of the covered person's injury and appropriately documented in the covered person's medical records;

2.  Provided in accordance with recognized standards of care for the covered person's injury at the time the charge is incurred;

3.  Consistent with published practice guidelines and technology, and assessment standards of national organizations or multi-disciplinary medical groups;

4.  Not primarily for the convenience of the covered person, his or her physician, hospital, or other health care provider;

5.  The most appropriate supply or level of service that can be safely provided to the covered person; and

6.  Not excessive in terms of scope, duration, or intensity of care needed to provide safe, adequate, and appropriate diagnosis and treatment.

However, "medically necessary and appropriate medical services" do not include the following:

1.  Nutritional supplements or over-the-counter drugs;

0901119cab6aca80

USAA Confidential


Case ID: 210200246
POLICY-25
Control No.: 21022482

(PART B Cont'd.)

2. Experimental services or supplies, which means services or supplies that we determine have not been accepted by the majority of the relevant medical specialty as safe and effective for treatment of the condition for which its use is proposed; or

3. Inpatient services or supplies provided to the covered person when these could safely have been provided to the covered person as an outpatient.

INSURING AGREEMENT

A. We will pay only the medical payment fee for medically necessary and appropriate medical services and the reasonable expense for funeral services. These fees and expenses must:

1. Result from BI sustained by a covered person in an auto accident; and

2. Be incurred for services rendered within 18 months from the date of the auto accident.

B. We or someone on our behalf will review, by audit or otherwise, claims for benefits under this coverage to determine if the charges are medical payment fees for medically necessary and appropriate medical services or reasonable expenses for funeral services. A provider of medical or funeral services may charge more than the amount we determine to be medical payment fees and reasonable expenses, but such additional charges are not covered.

C. We will not be liable for pending or subsequent benefits if a covered person or assignee of benefits under Medical Payments Coverage unreasonably refuses to submit to an examination as required in Part E - General Provisions, Duties after an Accident or Loss.

LIMIT OF LIABILITY

A. The limit of liability shown on the Declarations for Medical Payments Coverage is the maximum limit of liability for each covered person injured in any one accident. This is the most we will pay regardless of the number of:

1. Covered persons;

2. Claims made;

3. Vehicles or premiums shown on the Declarations; or

4. Vehicles involved in an auto accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part A or Part C of this policy; or

2. Any First Party Benefits.

EXCLUSIONS

We do not provide benefits under this Part for any covered person for BI:

1. Sustained while occupying any vehicle that is not your covered auto unless that vehicle is:

a. A four- or six-wheel land motor vehicle designed for use on public roads;

b. A moving van for personal use;

c. A miscellaneous vehicle; or

d. A vehicle used in the business of farming or ranching.

2. Sustained while occupying your covered auto when it is being used to carry persons for a fee. This exclusion (2.) does not apply to:

a. A share-the-expense car pool; or

USAA Confidential

(PART B Cont'd.)

b. Your covered auto used for volunteer work when reimbursement is limited to mileage expenses.

3. Sustained while occupying any vehicle located for use as a residence.

4. Occurring during the course of employment if workers' compensation benefits are required or available.

5. Sustained while occupying, or when struck by, any vehicle, other than your covered auto, that is owned by you.

6. Sustained while occupying, or when struck by, any vehicle, other than your covered auto, that is owned by any family member. This exclusion (6.) does not apply to you.

7. Sustained while occupying a vehicle without expressed or implied permission.

8. Sustained while occupying a vehicle when it is being used in the business or occupation of a covered person. This exclusion (8.) does not apply to BI sustained while occupying a private passenger auto, pickup or van, or a trailer used with these vehicles.

9. Caused by or as a consequence of war, insurrection, revolution, nuclear reaction, or radioactive contamination.

10. Sustained while occupying your covered auto while it is rented or leased to others, or shared as part of a personal vehicle sharing program.

11. Sustained while a participant in, or in practice for, any driving contest or challenge.

12. Sustained as a result of a covered person's exposure to fungi, wet or dry rot, or bacteria.

OTHER INSURANCE

If there is other applicable auto medical payments insurance, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

SPECIAL PROVISIONS

If your covered auto and every other motor vehicle you own are within the policy territory referred to in Part E – General Provisions, then coverage under Part B – Medical Payments Coverage will apply to you and any family member anywhere in the world.

---

# PART B - AIR BAG AND SEAT BELT BENEFITS

DEFINITIONS

A. "Air bag" means a supplemental passive restraint system commonly referred to as an air bag which is originally installed by the vehicle manufacturer and which, at the time of the accident, had not been made inoperable through modification, deactivation, disconnection, switching off or prior deployment.

B. "Beneficiary" means (in order of priority of payment):

1. The surviving spouse if a resident in the same household as the deceased at the time of the time of the accident; or

2. If the deceased is an unmarried minor, either of the surviving parents who had legal custody at the time of the accident; or

3. The estate of the deceased.

C. "Covered person" as used in this Part means:

0901119cab6aca80

USAA Confidential

Case ID: 210200246
POLICY-27
Control No.: 21022482

(PART B Cont'd.)

1. You or any family member while occupying any auto;

2. Any other person while occupying your covered auto.

D. "Seat belt" means manual or automatic safety belts or seat and shoulder restraints or a child restraint device. Both the lap and shoulder restraints must be worn at the time of the accident for coverage to apply. If the covered person is a child, the child restraint device must meet federal motor vehicle safety standards and must be one recommended by its manufacturer as appropriate for use by children of like age and weight. The child must be properly seated and restrained within the device and the device must be attached to the interior of the vehicle in accordance with the manufacturer's instructions.

INSURING AGREEMENT

We will provide the benefits described only if at the time of the accident, the covered person for whom benefits are sought was:

1. Wearing a seat belt; or

2. Wearing a seat belt and occupying a seat in an automobile in which he was protected by an air bag; and

3. Entitled to collect benefits for medical expenses incurred as a result of the accident under the terms of the policy's First Party Benefits Coverage.

We will pay a Death Benefit of $15,000 to the beneficiary of a covered person who dies as the direct result of BI sustained in an automobile accident while wearing a seat belt. We will pay an Additional Death Benefit of $10,000 to the beneficiary of a covered person who dies as a direct result of BI sustained in an automobile accident while wearing a seat belt and occupying a seat protected by an air bag.

LIMIT OF LIABILITY

The maximum Death Benefit we will pay under Air Bag and Seat Belt Benefits is $15,000 for death of any one covered person. The maximum Additional Death Benefit we will pay for death of any one covered person is $10,000.

These amounts are the most we will pay regardless of the number of:

1. Vehicles to which Air Bag and Seat Belt Benefits apply; or

2. The number of coverages or premiums shown on the Declarations.

EXCLUSIONS

All the exclusions contained in the policy's First Party Benefit coverage apply to this Part.

OTHER INSURANCE

The Death Benefit and Additional Death Benefit provided by Air Bag and Seat Belt Benefits will be paid in addition to any death benefit payable under the policy's First Party Benefits Coverage.

If there are other applicable air bag and seat belt death benefits, the maximum limit of our liability for the death of any one covered person under all such policies shall not exceed $15,000 for the Death Benefit and $10,000 for the Additional Death Benefit.

---

# PART C – UNINSURED MOTORISTS COVERAGE (referred to as UM Coverage) and UNDERINSURED MOTORISTS COVERAGE (referred to as UIM Coverage)

---

DEFINITIONS

A. "Covered person" as used in this Part means:

1. You or any family member.

2. Any other person occupying your covered auto.

5100PA(03) Rev. 01-14

0901119cab6aca80

USAA Confidential


Case ID: 210200246
POLICY 28
Control No.: 21022482

(PART C Cont'd.)

3. Any person for damages that person is entitled to recover because of BI to which this coverage applies sustained by a person described in 1. or 2. above.

However, "covered person" does not include the United States of America or any of its agencies.

B. "Uninsured motor vehicle."

1. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

   a. To which no liability bond, policy, or self-insurance applies at the time of the accident.

   b. To which a liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the minimum limits specified by the financial responsibility law of the state in which the insured vehicle is principally garaged.

   c. That is a hit-and-run motor vehicle. This means a motor vehicle whose owner or operator cannot be identified and that hits or that causes an accident resulting in BI without hitting:

      (1) You or any family member;

      (2) A vehicle you or any family member is occupying; or

      (3) Your covered auto.

      Any accident with a hit-and-run motor vehicle must be reported promptly to the police or to the proper government authority; and you or your representative must report the accident to us within 30 days or as soon as practicable.

   d. To which a liability bond or policy applies at the time of the accident but the bonding or insuring company denies coverage or is or becomes

insolvent within six years after the accident.

2. "Uninsured motor vehicle" does not include:

   a. An underinsured motor vehicle; or

   b. Any vehicle or equipment:

      (1) Owned by or furnished or available for the regular use of you or any family member.

      (2) Owned or operated by a self-insurer under any applicable motor vehicle law.

C. "Underinsured motor vehicle."

1. "Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a liability bond, policy or self-insurance applies at the time of the accident, but its available limits for bodily injury liability are insufficient to pay losses and damages.

2. "Underinsured motor vehicle" does not include:

   a. An uninsured motor vehicle.

   b. Any vehicle or equipment owned by or furnished or available for the regular use of you or any family member. This applies only if the named insured on the liability bond or policy applicable to the underinsured motor vehicle is:

      (1) The named insured on this policy; or

      (2) The covered person making a claim under this policy.

      However, this (C.2.b.) shall not apply if such vehicle or equipment is covered by a policy of liability insurance separate and distinct from the policy under which UIM benefits are claimed.

5100PA(03) Rev. 01-14

0901119cab6aca80

USAA Confidential



Case ID: 210200246
Control No.: 21022482
POLICY 29

(PART C Cont'd.)

D. "Uninsured motor vehicle" and "underinsured motor vehicle" do not include any vehicle or equipment:

1. Operated on rails or crawler treads, except for a snowmobile.

2. Designed mainly for use off public roads while not on public roads.

3. While located for use as a residence or premises.

## INSURING AGREEMENT

A. UM Coverage.

1. We will pay compensatory damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of BI sustained by a covered person and caused by an auto accident.

2. The owner's or operator's liability for these damages must arise out of the ownership, maintenance, or use of the uninsured motor vehicle.

B. UIM Coverage.

1. We will pay compensatory damages which a covered person is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of BI sustained by a covered person and caused by an auto accident.

2. The owner's or operator's liability for these damages must arise out of the ownership, maintenance, or use of the underinsured motor vehicle.

3. Damages for BI payable under UIM Coverage will be reduced by:

a. The BI liability limits of the owners and operators of the underinsured motor vehicle; and

b. Amounts paid by or on behalf of

any other persons or organizations who may be legally responsible.

C. We will pay under UM Coverage or UIM Coverage only after the limits of liability under any applicable liability bonds or policies have been exhausted by payment of judgments or settlements.

D. No judgment for damages arising out of a suit brought against the owner or operator of an uninsured motor vehicle or underinsured motor vehicle is binding on us unless we:

1. Receive reasonable notice of the pendency of the suit resulting in the judgment; and

2. Have a reasonable opportunity to protect our interests in the suit.

## LIMIT OF LIABILITY

A. UM Coverage (Stacked).

1. Accidents involving BI to you or any family member.

a. For BI sustained by you or any family member:

(1) Our maximum limit of liability for all resulting damages, including, but not limited to, all direct, derivative or consequential damages recoverable by any persons is the limit of liability shown on the Declarations for "each person" for UM Coverage multiplied by the number of premiums shown on the Declarations for UM Coverage.

(2) Subject to this limit for "each person," our maximum limit of liability for all damages for BI sustained by you and any family members in any one accident is the limit of liability shown on the Declarations for "each accident" for UM Coverage multiplied by the number of premiums shown on the Declarations for UM Coverage.

5100PA(03) Rev. 01-14

0901119cab6aca80        USAA Confidential

Case ID: 210200246
POLICY 30
Control No.: 21022482

(PART C Cont'd.)

(3) However, if any covered person other than you or any family member also sustains BI in the accident, you or any family member will be entitled only to a pro-rata share of the "each accident" limit applicable to the vehicle being occupied at the time of the accident.

b. For BI sustained by any one covered person other than you or any family member in any one accident, our maximum limit of liability for all resulting damages, including, but not limited to, all direct, derivative, or consequential damages recoverable by any persons is that covered person's pro-rata share of the "each accident" limit of liability for UM Coverage applicable to the vehicle that covered person was occupying at the time of the accident.

c. A person's pro-rata share is the proportion that that person's damages bears to the total damages sustained by all covered persons.

d. Whether Paragraph A.1.a. or Paragraph A.1.b., applies, these limits are the most we will pay regardless of the number of:

(1) Covered persons;

(2) Claims made;

(3) Vehicles or premiums shown on the Declarations; or

(4) Vehicles involved in the accident.

2. Accidents not involving BI to you or any family member.

a. For BI sustained by any covered person other than you or any family member in an accident in which neither you nor any family member sustains BI, our maximum limit of liability for all resulting damages, including, but not limited to, all direct, derivative, or

consequential damages recoverable by any persons, is the limit of liability shown on the Declarations for "each person" for UM Coverage.

b. Subject to this limit for "each person," the limit of liability shown on the Declarations for "each accident" for UM Coverage is our maximum limit of liability for all damages for BI resulting from any one accident.

c. These limits are the most we will pay regardless of the number of:

(1) Covered persons;

(2) Claims made;

(3) Vehicles or premiums shown on the Declarations; or

(4) Vehicles involved in the accident.

B. UIM Coverage (Stacked).

1. Accidents involving BI to you or any family member.

a. For BI sustained by you or any family member:

(1) Our maximum limit of liability for all resulting damages, including, but not limited to, all direct, derivative, or consequential damages recoverable by any persons is the limit of liability shown on the Declarations for "each person" for UIM Coverage multiplied by the number of premiums shown on the Declarations for UIM Coverage.

(2) Subject to this limit for "each person," our maximum limit of liability for all damages for BI to you and any family members in any one accident is the limit of liability shown on the Declarations for "each accident" for UIM Coverage multiplied by the number of premiums shown on the Declarations for UIM Coverage.

0901119cab6aca80                    USAA Confidential

Case ID: 210200246
POLICY 31
Control No.: 21022482

(PART C  Cont'd.)

(3) However, if any covered person other than you or any family member also sustains BI in the accident, you or any family member will be entitled only to a pro-rata share of the "each accident" limit applicable to the vehicle being occupied at the time of the accident.

b. For BI sustained by any one covered person other than you or any family member in any one accident, our maximum limit of liability for all resulting damages, including, but not limited to, all direct, derivative, or consequential damages recoverable by any persons is that covered person's pro-rata share of the "each accident" limit of liability for UIM Coverage applicable to the vehicle that covered person was occupying at the time of the accident.

c. A person's pro-rata share is the proportion that that person's damages bears to the total damages sustained by all covered persons.

d. Whether Paragraph B.1.a. or Paragraph B.1.b. applies, these limits are the most we will pay regardless of the number of:

(1) Covered persons;

(2) Claims made;

(3) Vehicles or premiums shown on the Declarations; or

(4) Vehicles involved in the accident.

2. Accidents not involving BI to you or any family member.

a. For BI sustained by any covered person other than you or any family member in an accident in which neither you nor any family member sustains BI, our maximum limit of liability for all resulting damages, including, but not limited

to, all direct, derivative, or consequential damages recoverable by any persons, is the limit of liability shown on the Declarations for "each person" for UIM Coverage.

b. Subject to this limit for "each person," the limit of liability shown on the Declarations for "each accident" for UIM Coverage is our maximum limit of liability for all damages for BI resulting from any one accident.

c. These limits are the most we will pay regardless of the number of:

(1) Covered persons;

(2) Claims made;

(3) Vehicles or premiums shown on the Declarations; or

(4) Vehicles involved in the accident.

C. No one will be entitled to receive duplicate payments for the same elements of loss.

D. Any amounts otherwise payable for damages under UM Coverage or UIM Coverage shall be reduced by all sums paid because of the BI by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A.

E. A person may not recover damages under UM Coverage and UIM Coverage for the same accident.

EXCLUSIONS

A. We do not provide UM Coverage for BI sustained by any covered person while occupying, or when struck by, any motor vehicle owned by you or any family member which is not insured for UM Coverage under this policy. This includes a trailer of any type used with that vehicle.

B. We do not provide UIM Coverage for BI sustained by any covered person while occupying, or when struck by, any motor vehicle owned by you or any family

0901119cab6aca80

USAA Confidential

Case ID: 210200246
Control No.: 21022482
POLICY 32

(PART C Cont'd.)

member which is not insured for UIM Coverage under this policy. This includes a trailer of any type used with that vehicle.

C. We do not provide UM Coverage or UIM Coverage for BI sustained by any covered person:

1. If that person or the legal representative settles the BI claim without our written consent.

2. While occupying your covered auto when it is being used to carry persons for a fee. This exclusion (C.2.) does not apply to:

   a. A share-the-expense car pool; or

   b. Your covered auto used for volunteer work when reimbursement is limited to mileage expenses.

3. Using a vehicle without expressed or implied permission.

4. While your covered auto is rented or leased to others, or shared as part of a personal vehicle sharing program.

5. While occupying any vehicle when it is being operated in, or in practice for, any driving contest or challenge.

D. UM Coverage and UIM Coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any disability benefits or similar law, except a workers' compensation law.

E. We do not provide UM Coverage or UIM Coverage for punitive or exemplary damages.

F. We do not provide UM Coverage or UIM Coverage for noneconomic loss sustained by a covered person to whom the limited tort alternative applies unless that person sustains a serious injury.

This exclusion (F.) does not apply if that person is injured while occupying a motor vehicle insured under a commercial motor vehicle insurance policy.

G. We do not provide UM Coverage or UIM Coverage for PD sustained by a covered person.

OTHER INSURANCE

A. If there is other applicable insurance for UM Coverage or UIM Coverage available under one or more policies or provisions of coverage, the following priorities of recovery apply:

First    The UM Coverage or UIM Coverage applicable to the vehicle the covered person was occupying at the time of the accident.

Second    The policy providing UM Coverage or UIM Coverage to a motor vehicle not involved in the accident with respect to which the injured person is a covered person.

B. If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority. The insurer is thereafter entitled to recover contribution pro-rata from any other insurer for the benefits paid and the costs of processing the claim.

CONSENT TO SETTLE

A. If a covered person receives a written offer from a tortfeasor's insurer, which in combination with any other settlements arising out of the same occurrence, would exhaust that insurer's applicable BI limits, the covered person shall submit written notice of the proposed settlement to us. Such notice shall include a copy of the written offer.

B. Within 30 days of the receipt of this written notice, we will give the covered person:

0901119cab6aca80                    USAA Confidential



Case ID: 210200246
POLICY 33
Control No.: 21022482

(PART C Cont'd.)

1. Written consent to accept the settlement offer and the execution of release; or

2. Written refusal to consent to accept the settlement offer.

C. If we refuse to give consent to accept the settlement offer, we shall, within 30 days, pay the covered person the amount of the settlement offer. We shall then be entitled to the covered person's right of recovery to the extent of such payment and any settlement under UM Coverage or UIM Coverage.

D. If we fail to pay the covered person the amount of the written settlement offer within 30 days, we have no right to the proceeds of any settlement or judgment for any amount paid under UM Coverage or UIM Coverage, and the covered person may accept the written settlement offer of the tortfeasor's insurer.

E. Payment of the settlement offer will be separate from any amount the covered person is entitled to recover under the provisions of UM Coverage or UIM Coverage.

## PART D - PHYSICAL DAMAGE COVERAGE

DEFINITIONS

A. "Actual cash value" means the amount that it would cost, at the time of loss, to buy a comparable vehicle. As applied to your covered auto, a comparable vehicle is one of the same make, model, model year, body type, and options with substantially similar mileage and physical condition.

B. "Collision" means the impact with an object and includes upset of a vehicle. Loss caused by the following is covered under Comprehensive Coverage and is not considered collision: fire; missiles or falling objects; hail, water or flood; malicious mischief or vandalism; theft or larceny; riot or civil commotion; explosion or earthquake; contact with bird or animal; windstorm; or breakage of window glass. If breakage of window glass is caused by a collision, you may elect to have it considered a loss caused by collision.

C. "Domestic abuse" means attempting to cause or intentionally, knowingly or recklessly causing damage to property so as to intimidate or attempt to control the behavior of another person.

D. "Equipment and accessories" means the following while in or upon your covered auto:

1. Any item usual and incidental to the use of a motor vehicle as a motor vehicle.

2. Any device or instrument for transmitting, recording, receiving or reproducing data, sound, or pictures that is capable of being operated by power from the electrical system of your covered auto, including:

   a. Cassettes, compact discs, digital video discs (DVD's) and other media for use with any such device or instrument; and Antennas and other accessories for use with any such device or instrument.

   b. Antennas and other accessories for use with any such device or instrument.

E. "Innocent co-insured" means you or any family member claiming loss who has not cooperated in or contributed to the creation of the loss.

F. "Loss" means direct and accidental damage to the operational safety, function, or appearance of, or theft of, your covered auto or equipment and accessories that are not permanently installed in your covered auto. Loss includes a total loss, but does not include any damage other than the cost to repair or replace. Loss does

0901119cab6aca80

USAA Confidential



Case ID: 210200246
POLICY - 34
Control No.: 21022482

(PART D Cont'd.)

not include any loss of use, or diminution in value that would remain after repair or replacement of the damaged or stolen property.

G. "Nonowned vehicle."

1. "Nonowned vehicle" means any private passenger auto, pickup, van, miscellaneous vehicle, or trailer not owned by, or furnished or available for the regular use of, you or a family member. This applies only when the vehicle is in the custody of or being operated by you or a family member.

2. A nonowned vehicle does not include any of the following vehicles used in any business or occupation other than farming or ranching:

   a. A pickup;

   b. A van; or

   c. A miscellaneous vehicle.

H. "Repair."

1. "Repair" means restoring the damaged property to its pre-loss operational safety, function, and appearance. This may include the replacement of component parts.

2. Repair does not require:

   a. A return to the pre-loss market value of the property;

   b. Restoration, alteration, or replacement of undamaged property, unless such is needed for the operational safety of the vehicle; or

   c. Rekeying of locks following theft or misplacement of keys.

I. "Your covered auto," as used in this Part, includes:

1. Equipment and accessories permanently installed in or on your covered auto.

2. A nonowned vehicle. If there is a loss to a nonowned vehicle, we will provide the broadest coverage shown on the Declarations.

INSURING AGREEMENT

A. Comprehensive Coverage (excluding collision).

1. Physical damage. We will pay for loss caused by other than collision to your covered auto and equipment and accessories that are not permanently installed in your covered auto, minus any applicable deductible shown on the Declarations. The deductible will be waived for loss to window glass that can be repaired rather than replaced. In cases where the repair proves unsuccessful and the window glass must be replaced, the full amount of the deductible, if any, must be paid.

2. Transportation expenses. We will also pay:

   a. Up to $30 a day, to a maximum of $900, for transportation expenses incurred by you or any family member. This applies only in the event of a total theft of your covered auto. We will pay only transportation expenses incurred during the period beginning 48 hours after the theft and ending when your covered auto is returned to use or, if not recovered or not repairable, up to seven days after we have made a settlement offer.

   b. If Rental Reimbursement Coverage is afforded, limits for transportation expenses are the limits of liability shown on the Declarations for Rental Reimbursement Coverage for that vehicle.

B. Collision Coverage. We will pay for loss caused by collision to your covered auto and equipment and accessories that are not permanently installed in your covered auto, minus any applicable deductible shown on the Declarations.

0901119cab6aca80    USAA Confidential



Case ID: 210200246
POLICY 35
Control No.: 21022482

(PART D Cont'd.)

C.  Rental Reimbursement Coverage (for loss other than total theft).

1.  We will reimburse you for expenses you or any family member incurs to rent a substitute for your covered auto. This coverage applies only if:

a.  Your covered auto is withdrawn from use for more than 24 hours due to a loss, other than a total theft, to that auto; and

b.  The loss is covered under Comprehensive Coverage or caused by collision, and the cause of loss is not otherwise excluded under Part D of this policy.

2.  We will reimburse you only for that period of time reasonably required to repair or replace your covered auto. If we determine your covered auto is a total loss, the rental period will end no later than seven days after we have made a settlement offer.

D.  USAA Roadside Assistance. We will pay the reasonable costs you or any family member incurs for one of the following each time your covered auto is disabled:

1.  Mechanical labor up to one hour at the place of breakdown.

2.  Locksmith services to gain entry to your covered auto. This does not include the rekeying of locks following theft or misplacement of keys.

3.  Towing, to the nearest place where necessary repairs can be made during regular business hours, if the vehicle will not run or is stranded on or immediately next to a public road.

4.  Delivery of gas or oil to, or a change of tire on a disabled vehicle. However, we do not pay for the cost of these items.

LIMIT OF LIABILITY

A.  Total loss to your covered auto. Our limit of liability under Comprehensive Coverage and Collision Coverage is the actual cash value of the vehicle. We will declare your covered auto to be a total loss if, in our judgment, the cost to repair it would be greater than its actual cash value minus its salvage value after the loss.

B.  Other than a total loss to your covered auto:

1.  Our limit of liability under Comprehensive Coverage and Collision Coverage is the amount necessary to repair the loss based on our estimate or an estimate that we approve, if submitted by you or a third party. Upon request, we will identify at least one facility that is willing and able to complete the repair for the amount of the estimate.

2.  Our estimate may specify used, rebuilt, remanufactured, or non-Original Equipment Manufacturer (non-OEM) parts.

3.  You may request that damaged parts be replaced with new Original Equipment Manufacturer (OEM) parts. You will be responsible, however, for any cost difference between the parts included in our estimate and the new OEM parts used in the repair.

4.  We will not take a deduction for depreciation. We will take a deduction if prior damage has not been repaired. Prior damage does not include wear and tear.

C.  Equipment and accessories that are not permanently installed in your covered auto. The limits of liability described below are separate from the limits available for a loss to your covered auto.

1.  Our limit of liability under Comprehensive Coverage and Collision Coverage for media described in Definition D.2.a. is the lesser of:

0901119cab6aca80

USAA Confidential



Case ID: 210200246
POLICY 36
Control No.: 21022482

(PART D Cont'd)

    a. The amount necessary to replace the damaged or stolen property; or

    b. $250.

2. Our limit of liability for loss to all other equipment and accessories not permanently installed in your covered auto is the lesser of:

    a. The amount necessary to repair or replace the damaged or stolen property; or

    b. $3,000.

3. We will not take a deduction for depreciation.

D. Under Rental Reimbursement Coverage, our maximum limits of liability are the limits of liability shown on the Declarations for Rental Reimbursement Coverage for that vehicle.

E. Under USAA Roadside Assistance, our limit of liability is the reasonable price for the covered service.

## PAYMENT OF LOSS

We may pay for loss in money, or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to you or to the address shown on the Declarations. If we return stolen property, we will pay for any damage resulting from the theft. We may keep all or part of the damaged or stolen property and pay you an agreed or appraised value for it. We cannot be required to assume the ownership of damaged property. We may settle a claim either with you or with the owner of the property.

## LOSS PAYABLE CLAUSE

Loss or damage under this policy will be paid, as interest may appear, to the named insured and the loss payee shown on the Declarations. This insurance, with respect to the interest of the loss payee, will not become invalid because of your fraudulent acts or omissions unless the loss results from your conversion, secretion, or embezzlement of your covered auto. We may cancel the policy as permitted by policy terms and the cancellation will terminate this agreement as to the loss payee's interest. We will give the same advance notice of cancellation to the loss payee as we give to the named insured shown on the Declarations. We may send notices to the loss payee either by mail or by electronic means. However, if the loss payee requests in writing that we not send notices, including a notice of cancellation, we will abide by that request. When we pay the loss payee we will, to the extent of payment, be subrogated to the loss payee's rights of recovery.

## WAIVER OF COLLISION DEDUCTIBLE

We will not apply the deductible, in excess of $100, to loss caused by collision with another vehicle if all of these conditions are met:

1. The loss to your covered auto is greater than the deductible amount; and

2. The owner and driver of the other vehicle are identified; and

3. The owner or driver of the other vehicle has a liability policy covering the loss; and

4. The driver of your covered auto is not legally responsible, in any way, for causing or contributing to the loss.

## EXCLUSIONS

We will not pay for:

1. Loss to your covered auto which occurs while it is used to carry persons for a fee. This exclusion (1.) does not apply to:

    a. A share-the-expense car pool; or

    b. Your covered auto used for volunteer work when reimbursement is limited to mileage expenses.

0901119cab6aca80     USAA Confidential


Case ID: 210200246
Control No.: 21022482
POLICY 37

(PART D Cont'd)

2. Damage due and confined to:

   a. Road damage to tires;

   b. Wear and tear;

   c. Freezing; or

   d. Mechanical or electrical breakdown or failure, including such damage resulting from negligent servicing or repair of your covered auto or its equipment. We will pay for ensuing damage only to the extent the damage occurs outside of the major component (such as transmission/transaxle, electrical system, engine including cooling and lubrication thereof, air conditioning, computer, suspension, braking, drive assembly, and steering) in which the initial mechanical or electrical breakdown or failure occurs.

   This exclusion (2.) does not apply if the damage results from the total theft of your covered auto, and it does not apply to USAA Roadside Assistance.

3. Loss due to or as a consequence of war, insurrection, revolution, nuclear reaction, or radioactive contamination.

4. Loss to a camper body or trailer owned by you or any family member that is not shown on the Declarations. This exclusion (4.) does not apply to one you or any family member acquires during the policy period and asks us to insure within 30 days after you or any family member becomes the owner.

5. Loss to any nonowned vehicle when used by you or any family member without a reasonable belief that you or that family member is entitled to do so.

6. Loss to equipment designed or used to evade or avoid the enforcement of motor vehicle laws.

7. Loss to any nonowned vehicle arising out of its use by you or any family member while employed or otherwise engaged in auto business operations.

8. Loss to your covered auto while it is rented or leased to others, or shared as part of a personal vehicle sharing program.

9. Loss to any vehicle while it is being operated in, or in practice for, any driving contest or challenge.

10. Loss resulting from:

    a. The acquisition of a stolen vehicle;

    b. Any legal or governmental action to return a vehicle to its legal owner; or

    c. Any confiscation or seizure of a vehicle by governmental authorities.

    This exclusion (10.) does not apply to innocent purchasers of stolen vehicles for value under circumstances that would not cause a reasonable person to be suspicious of the sales transaction or the validity of the title.

11. Loss resulting from use in any illicit or prohibited trade or transportation.

12. Any loss arising out of any act committed:

    a. By or at the direction of you or any family member; and

    b. With the intent to cause a loss.

    This exclusion (12.) does not apply to the extent of the insurable interest of an innocent co-insured, if loss is caused by an act of domestic abuse.

0901119cab6aca80            USAA Confidential

Case ID: 210200246
POLICY 38
Control No.: 21022482

(PART D Cont'd)

13. Loss caused by fungi, wet or dry rot, or bacteria. This means the presence, growth, proliferation, spread, or any activity of fungi, wet or dry rot, or bacteria. This exclusion (13.) does not apply to damage directly resulting from a loss covered under Comprehensive Coverage or Collision Coverage.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

A. If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

B. Any insurance we provide with respect to a nonowned vehicle will be excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the nonowned vehicle.

2. Any other applicable physical damage insurance.

3. Any other source of recovery applicable to the loss.

C. This provision does not apply to USAA Roadside Assistance.

## APPRAISAL

If we and you do not agree on the amount of loss, either may demand an appraisal. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will pay its chosen appraiser and share the expenses of the umpire equally. Neither we nor you waive any rights under this policy by agreeing to an appraisal.

# PART E - GENERAL PROVISIONS

## BANKRUPTCY

Bankruptcy or insolvency of the covered person, as defined in this policy, shall not relieve us of any obligations under this policy.

## CHANGES

A. The premium is based on information we have received from you and other sources. You agree to cooperate with us in determining if this information is correct and complete. You agree that if this information changes, or is incorrect or incomplete, we may adjust your premiums accordingly during the policy period.

B. If, during the policy period, the risk exposure changes for any of the following reasons, we will make the necessary premium adjustments effective the date of change in exposure. Change in exposure means the occurrence of an event listed in B.1. through B.7. or in E. below, or a similar event that may increase or decrease the policy premium. You agree to give us notice of any exposure change as soon as is reasonably possible. Changes that may result in a premium adjustment include, but are not limited to, the following:

1. Change in location where any vehicle is garaged.

2. Change in description, equipment, purchase date, registration, cost, usage, miles driven annually, or operators of any vehicle.

0901119cab6aca80

USAA Confidential

Case ID: 210200246
POLICY 39
Control No.: 21022482

(PART E Cont'd)

3. Replacement or addition of any vehicle. A replacement or additional vehicle is a newly acquired vehicle.

4. Deletion of a vehicle. The named insured may request that a vehicle shown on the Declarations be deleted from this policy. The effective date of this change cannot be earlier than the date of the named insured's request unless we agree to an earlier date.

5. Change in date of birth, marital status, driver's license information, or driving record of any operator.

6. Addition or deletion of an operator.

7. Change, addition, or deletion of any coverage or limits.

C. We will make any calculations or adjustments of your premium using the applicable rules, rates, and forms as of the effective date of the change.

D. If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement that change in your location. This paragraph does not apply to changes implemented with a revision that includes both broadenings and restrictions in coverage. Otherwise, this policy includes all of the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

E. Deployment.

1. If, because of your active-duty deployment in one of the military services of the United States, you have reduced the coverage on your covered auto and placed the vehicle in storage, then, upon your return from the deployment, we will reinstate the coverage that was on the vehicle prior to the deployment-caused reduction beginning on the date the vehicle is removed from storage.

2. Any reinstatement of coverage under E.1. will apply for up to 60 days after the date you returned from deployment. If you wish to continue the reinstated coverage beyond the 60-day period, you must request it during the 60-day period. If you request reinstated coverage after this 60-day period, any coverage we agree to provide will be effective at the date and time of your request unless we agree to an earlier date.

3. You must pay an additional premium, as set out in Part E., Changes, B.7., for the reinstated coverage. However, if you return from deployment on furlough or emergency leave for a period of 30 days or less, we will waive any increase in the premium for the period of time you are on furlough or emergency leave, provided that no claim for coverage under this policy is made for a loss that occurs during that time period. If a loss occurs we will, as of the date of the loss, reinstate the coverage that was on the vehicle prior to the deployment-caused reduction, and you must pay an additional premium for that coverage.

CONFORMITY TO LAW

If any of the terms of this policy conflict with state or local law, state or local law will apply.

CONSTITUTIONALITY CLAUSE

The premium for, and the coverages of, this policy have been established in reliance upon the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law. In the event a court, from which there is no appeal, declares or enters a judgment the effect of which is to render the provisions of such statute invalid or unenforceable in whole or in part, we will have the right to recompute the premium payable for the policy and void or amend the provisions of the policy, subject to the approval of the Insurance Commissioner.

0901119cab6aca80                    USAA Confidential

Case ID: 210200246
POLICY 40
Control No.: 21022482

(PART E Cont'd)

DUTIES AFTER AN ACCIDENT OR LOSS

We will not be required to provide coverage under this policy unless there has been full compliance with the following duties:

A. We must be notified promptly of how, when, and where an accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person or entity seeking any coverage or payment of any benefits except payment under Part A - Liability must:

1. Cooperate with us in the investigation, settlement, or defense of any claim or suit.

2. Promptly send us copies of any notices or legal papers received in connection with a suit, accident or loss.

3. Submit, as often as we reasonably require:

    a. To physical exams by physicians we select. We will pay for these exams.

    b. To examination under oath. The examination must be signed.

4. Authorize us to obtain medical reports and other pertinent records.

5. Submit a proof of loss when required by us.

6. Promptly notify the police if a hit-and-run driver is involved.

C. Any person seeking coverage under Part C - UM Coverage and UIM Coverage must also:

1. Notify us within 30 days, or as soon as practicable, if a hit-and-run driver is involved.

2. Submit written notice to us of the proposed settlement offered by a tortfeasor's insurer.

D. A person seeking coverage under Part D - Physical Damage Coverage must also:

1. Take reasonable steps after loss to protect your covered auto and its equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if your covered auto is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

LEGAL ACTION AGAINST US

A. No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part A, no legal action may be brought against us until we agree in writing that the covered person, as defined in Part A, has an obligation to pay, or the amount of that obligation has been finally determined by judgment after trial.

B. No person or organization has any right under this policy to bring us into any action to determine the liability of a covered person, as defined in this policy.

C. Under Part C - Uninsured Motorists Coverage and Underinsured Motorists Coverage:

1. No action can be brought against us for any claim involving an uninsured motor vehicle unless the action is brought within four years from the date the covered person knows of the uninsured status of the owner or operator.

0901119cab6aca80

USAA Confidential

Case ID: 210200246
POLICY 41
Control No.: 21022482

(PART E Cont'd.)

2. No action can be brought against us for any claim involving an underinsured motor vehicle unless the action is brought within four years from the date on which the covered person receives a judgment from or settles with a third-party tortfeasor for less than the value of the covered person's damages.

D. Unless we agree otherwise, any legal action against us must be brought in a court of competent jurisdiction in the county and state where the covered person lived at the time of the accident.

MISREPRESENTATION

We do not provide any coverage under this policy for any person who has knowingly concealed or misrepresented any material fact or circumstance relating to this insurance:

1. At the time application was made; or

2. At any time during the policy period; or

3. In connection with the presentation or settlement of a claim.

NON-DUPLICATION OF PAYMENT

When a claim, or part of a claim, is payable under more than one provision of this policy, we will pay the claim only once under this policy.

OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another, we will be subrogated to that right. The person to or for who payment was made shall do whatever is necessary to enable us to exercise our rights, and shall do nothing after loss to prejudice them. However, our rights in this paragraph do not apply to payments under:

1. Part B - First Party Benefits.

2. Part B - Medical Payments Coverage.

3. Part B - Air Bag and Seat Belt Benefits.

4. Part C - Uninsured Motorists Coverage and Underinsured Motorists Coverage:

   a. If we give consent to a settlement; or

   b. If we refuse to consent to a settlement and fail to pay the covered person the amount of the written settlement offer within 30 days.

5. Part D - Physical Damage Coverage, against any person using your covered auto with a reasonable belief that that person is entitled to do so.

B. If we make a payment under this policy and the person to or for whom payment was made recovers damages from another, the person to or for whom payment was made shall hold in trust for us the proceeds of the recovery and reimburse us to the extent of our payment, minus a reasonable attorney's fee and a proportionate share of costs. However, this paragraph does not apply to:

1. Part B - First Party Benefits.

2. Part B - Medical Payments Coverage.

3. Part B - Air Bag and Seat Belt Benefits.

C. If the covered person, as defined in this policy, recovers from the party at fault and we share in the recovery, we will pay our share of the legal expenses. Our share is that percent of the legal expenses that the amount we recover bears to the total recovery. This does not apply to any amounts recovered or recoverable by us from any other insurer under any inter-insurer arbitration agreement.

D. If we make payment for a claim under Part A, and the covered person, as defined in Part A:

1. Knowingly concealed or misrepresented any material fact or circumstance relating to this insurance; or

5100PA(03) Rev. 01-14

Page 29 of 32

USAA Confidential

Case ID: 210200246
POLICY 42
Control No.: 21022482



(PART E Cont'd.)

2. Failed or refused to comply with the duties specified in this policy and prejudiced our defense of the liability claim by such failure or refusal;

then, the covered person shall reimburse us to the extent of our payment and cost of defense.

E. If we make payment for a claim under Part D and you or any family member has knowingly concealed or misrepresented any material fact or circumstance relating to this insurance, then you shall reimburse us to the extent of our payment.

OWNERSHIP

For purposes of this policy, a vehicle is deemed to be owned by a person if leased under a written agreement to that person for a continuous period of at least six months.

POLICY PERIOD AND TERRITORY

A. This policy applies only to accidents and losses which occur during the policy period as shown on the Declarations and within the policy territory. The policy territory is the United States of America (USA), its territories and possessions, Puerto Rico, and Canada, including transportation of your covered auto between any ports of these locations.

B. The policy territory also includes Mexico, subject to the following conditions:

1. All coverages afforded by the policy are extended to include coverage during trips into Mexico. This applies only to loss or accident that occurs within 75 miles of the USA border.

2. Any liability coverage afforded by the policy is extended to include the remainder of Mexico, but only if you have valid and collectible liability coverages from a licensed Mexican insurance company at the time of loss. This paragraph (B.2.) applies only if the original liability suit for BI or PD is brought in the USA.

3. Coverage under this policy does not extend:

a. To any covered person, as defined in this policy, who does not live in the USA.

b. To any covered person, as defined in this policy, occupying a vehicle which is not principally garaged and used in the USA.

c. To any vehicle which is not principally garaged and used in the USA.

4. The words "state or province" as used in the Out of State Coverage provision in Part A of the policy do not include a "state or province" of Mexico.

5. Losses payable under Part D of the policy will be paid in the USA. If the vehicle must be repaired in Mexico, our limit of liability will be determined at the nearest point in the USA where repairs can be made.

6. Any insurance we provide will be excess over any other similar valid and collectible insurance.

REDUCING THE RISK OF LOSS

We may occasionally provide you with products or services that assist you in preventing or reducing the risk of loss, and may provide an incentive for your use of these items.

SPOUSE ACCESS

A. The named insured and we agree that the named insured and resident spouse are "customers" for purposes of state and federal privacy laws. The resident spouse will have access to the same information available to the named insured and may initiate the same transactions as the named insured.

5100PA(03) Rev. 01-14

0901119cab6aca80

USAA Confidential


Case ID: 210200246
POLICY 43
Control No.: 21022482

(PART E Cont'd.)

B. The named insured may notify us that he/she no longer agrees that the resident spouse shall be treated as a "customer" for purposes of state and federal privacy laws, and we will not permit the resident spouse to access policy information.

TERMINATION

A. Cancellation. This policy may be cancelled during the policy period as follows:

1. You may cancel this policy at any time, but the effective date of cancellation cannot be earlier than the date of the request unless we agree to an earlier date.

2. We may cancel this policy by sending notice to the named insured shown on the Declarations. This cancellation notice may be delivered to the named insured, mailed by postal mail to the most recent address you provided to us or sent electronically if we have your consent and agreement on file to receive documents electronically. In any event, we will give:

   a. At least 15 days notice:

      (1) If cancellation is for nonpayment of premium; or

      (2) If notice is sent during the first 60 days this policy is in effect and this is not a renewal policy; or

      (3) If your driver's license has been suspended or revoked:

         (a) After the effective date if this policy has been in effect less than one year; or

         (b) If the policy has been in effect longer than one year, since the last anniversary of the original effective date.

   b. At least 60 days notice if the policy was obtained through material misrepresentation.

   However, our right to cancel this policy is subject to the limitations contained in the applicable Pennsylvania Statutes.

B. Nonrenewal. If we decide not to renew this policy, we will send notice to the named insured shown on the Declarations. This notice may be delivered to the named insured, mailed by postal mail to the most recent address you provided to us or sent electronically if we have your consent and agreement on file to receive documents electronically. In any event, notice will be sent:

1. At least 15 days before the end of the policy period:

   a. For nonpayment of premium; or

   b. If your driver's license has been suspended or revoked:

      (1) After the effective date if this policy has been in effect less than one year; or

      (2) If the policy has been in effect longer than one year, since the last anniversary of the original effective date.

2. At least 60 days before the end of the policy period in all other cases.

However, our right to nonrenew this policy is subject to the limitations contained in the applicable Pennsylvania Statutes.

C. Automatic Termination. If we offer to renew and you or your representative does not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal premium when due will mean that you have not accepted our offer.

0901119cab6aca80                    USAA Confidential

Case ID: 210200246
POLICY 44
Control No.: 21022482

(PART E Cont'd.)

D.  Other Termination Provisions.

1.  Proof of mailing or electronic transmission of any notice will be sufficient proof of notice.

2.  If this policy is cancelled, the named insured shown on the Declarations may be entitled to a premium refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

3.  The effective date of cancellation stated in the notice will become the end of the policy period.

**TRANSFER OF YOUR INTEREST IN THIS POLICY**

Your rights and duties under this policy may not be assigned without our written consent. However, if the named insured shown on the Declarations dies, we will provide coverage until the end of the policy period for:

1.  The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if the named insured shown on the Declarations; and

2.  The legal representative of the deceased person as if the named insured shown on the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use your covered auto.

**TWO OR MORE AUTO POLICIES**

If this policy and any other auto insurance policy we issued to you apply to the same accident, the maximum limit of our liability under all the policies will not exceed the highest applicable limit of liability under any one policy.

This provision does not apply to UM Coverage or UIM Coverage with respect to you or any family member.

Copyright, USAA, 2011. All rights reserved.
Includes copyrighted material of Insurance Services Office, used with permission.

0901119cab6aca80



USAA Confidential

Case ID: 210200246
POLICY 45
Control No.: 21022482